# IN THE SUPREME COURT OF TEXAS

═══════════
No. 18-0329
═══════════

JOY WORSDALE, INDIVIDUALLY AND AS THE PERSONAL REPRESENTATIVE OF THE
ESTATE OF SCOTT WORSDALE, ET AL., PETITIONERS,

v.

THE CITY OF KILLEEN, TEXAS, RESPONDENT

═══════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
═══════════════════════════════════════

**Argued February 21, 2019**

JUSTICE GUZMAN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE LEHRMANN, JUSTICE DEVINE, JUSTICE BROWN, and JUSTICE BUSBY joined.

JUSTICE BOYD filed a concurring opinion, in which JUSTICE BLACKLOCK joined.

The Texas Tort Claims Act provides a limited waiver of governmental immunity but, as part of the Act's waiver bargain, requires prompt notice of a claim.[1] Prompt notice allows governmental units to expeditiously undertake remedial measures that may be required to protect the public. Prompt notice also advances fundamental immunity underpinnings by allowing governmental units an opportunity to defend against tort claims and allocate resources to resolve potentially meritorious

---

[1] TEX. CIV. PRAC. & REM. CODE §§ 101.025, .101.

claims. So, as a jurisdictional prerequisite to suit,[2] section 101.101 of the Act requires formal "notice of a claim" that provides a reasonable description of the claim within six months of the occurrence, unless the governmental unit has "actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged."[3]

This wrongful-death case focuses on the actual-notice exception, which we long-ago construed in *Cathey v. Booth*[4] and *Texas Department of Criminal Justice v. Simons*[5] as requiring a governmental unit's "subjective awareness" of its "alleged fault producing or contributing to the death, injury, or property damage," meaning "fault as ultimately alleged by the claimant."[6] We hold that the undisputed evidence here conclusively establishes the governmental unit had actual notice it may be responsible for the deaths of two motorists whose vehicle struck an unbarricaded dirt mound completely blocking an unlit country road.

Within days after the accident, the municipal defendant knew that (1) a crash investigation identified the particular road hazard and the absence of any warning indicators as contributing to the accident; (2) maintenance of the road was alleged to be the municipality's responsibility; and (3) the municipality had annexed and never officially abandoned the property. Accordingly, not long after the crash, the municipality swiftly complied with the accident investigator's instructions to remove

---

[2] TEX. GOV'T CODE § 311.034.

[3] TEX. CIV. PRAC. & REM. CODE § 101.101.

[4] 900 S.W.2d 339, 341 (Tex. 1995).

[5] 140 S.W.3d 338, 343-48 (Tex. 2004).

[6] *Simons*, 140 S.W.3d at 339, 347-48; *Cathey*, 140 S.W.3d at 341.

2

the dirt mound and install permanent barricades and signage. Because we conclude the municipality had actual notice as required by section 101.101(c) of the Tort Claims Act, we reverse the court of appeals' judgment dismissing the suit for want of jurisdiction and remand the case to the trial court. In doing so, we decline the invitation to overrule our actual-notice precedent.

## I. Background

Scott Worsdale and Heike King were injured when the motorcycle Worsdale was driving collided with a large dirt mound spanning the width of Reese Creek Road, an unlit asphalt road in the City of Killeen, Bell County, Texas (the City). Within days after the crash, the Killeen Police Department dispatched an officer to conduct an accident investigation. The investigator photographed the accident site, including the dirt pile, and constructed a scale diagram of the scene using 3D laser-mapping technology. In the "Texas Peace Officer's Crash Report," the investigator identified road conditions and alcohol consumption as "contributing factors," observing:

> This area is dark and not lighted, at the time of the crash the area was dark. Reese Creek road is currently blocked by a dirt pile from the ditch on the North side of the roadway to the ditch on the south side of the roadway, closing the roadway to vehicular traffic for construction. At the time of the crash there were no signs, barricades, or cones present to indicate that the roadway was closed to Westbound traffic on Reese Creek East of the area of the crash.

As part of the crash investigation, the officer spoke with several officials from various city departments, including the deputy city attorney and the city inspector. The main topic of conversation was responsibility for road maintenance and warning signs. City officials acknowledged that the two-lane road had been obstructed for at least two years but denied responsibility for the blockage. The City explained that barricades and warning signs had not been

3

erected before the accident due to an ongoing dispute between Bell County and the City over jurisdiction. Each claimed the other was responsible for maintaining the road.

Although the city inspector said the City had owned but then abandoned the property, the city attorney informed the crash investigator that an ordinance would be required to abandon the road and none could be located. Two days after the accident, the City removed the dirt pile from the road at the police department's request and installed permanent road-closure signs and barricades. Though Worsdale and King survived the initial impact, King died a month later, and Worsdale ultimately succumbed to his injuries after lingering for more than a year. The police department never formally determined who was at fault and instead closed the case when Worsdale—"the suspect in the case"—died.

The decedents' relatives[7] sued the City under the Tort Claims Act, alleging the dirt mound was a "special defect" on the City's premises.[8] The City filed a plea to the jurisdiction based on the relatives' failure to provide prompt notice as required under section 101.101 of the Act. The relatives conceded formal notice under section 101.101(a) was lacking, but maintained the City had actual notice under section 101.101(c). After considering the undisputed evidence, the trial court denied the plea.

---

[7] The plaintiff relatives are Worsdale's widow, Joy, individually and as Worsdale's personal representative; Worsdale's parents, James and Betty; King's parents, Manuel and Ingeborg Martinez; King's children, Russell, Cody, and Tiffany King, individually and as personal representative of King's estate; and Laura Warmbier as next friend of Sommer Warmbier, King's minor daughter.

[8] *See* TEX. CIV. PRAC. & REM. CODE §§ 101.021(2), .022(b) (special defects include "excavations or obstructions on highways, roads, or streets").

4

On interlocutory appeal, the court of appeals reversed the trial-court order and dismissed the case for want of jurisdiction.[9] Relying principally on our opinion in the *City of Dallas v. Carbajal*,[10] the court concluded that a traffic-accident report resulting from a routine safety investigation is insufficient as a matter of law to provide actual notice to a governmental unit.[11] The court found the facts in this case "strikingly similar" to those in *Carbajal*, because the crash investigation report did not "expressly or impliedly attribute fault for the accident to the City . . . ."[12] Because the evidence was undisputed, the court decided the issue as a matter of law and held that the evidence was legally insufficient to establish the City had "subjective awareness . . . of its fault, as ultimately alleged by [the relatives], in producing or contributing to Worsdale's and King's injuries."[13]

We granted the relatives' petition for review, which asserts the court of appeals misapplied our actual-notice precedent, including *Cathey* and *Simons*, and argues in the alternative we should overturn our precedent because it conflicts with section 101.101(c)'s plain language.

The relatives' primary argument is that the court of appeals misconstrued our precedent as requiring a governmental unit to subjectively conclude it is actually liable for a loss. They contend that when assessed under the correct standard—subjective awareness of alleged fault contributing to the claimant's injury—the evidence here either establishes or, at a minimum, raises a fact issue

---

[9] 567 S.W.3d 377, 383 (Tex. App.—Austin 2018).

[10] 324 S.W.3d 537 (Tex. 2010).

[11] 567 S.W.3d at 381-82.

[12] *Id.*

[13] *Id.* (emphasis omitted).

5

that the City had actual notice. According to the relatives, the City knew about its alleged fault in contributing to the accident based on (1) the finger pointing between the City and the County regarding responsibility for maintaining the road, (2) the City's wide-ranging investigation that involved its legal counsel and city inspector, (3) the City's subsequent remedial measures, and (4) the City's denial of liability based on its mistaken belief about its ownership of the road. If this evidence does not at least raise a fact issue about actual notice, the relatives contend it is only because our actual-notice precedent erroneously interlineates requirements that are not supported by section 101.101(c)'s plain text, and we should therefore overrule *Cathey* and its progeny as wrongly decided.

Likening this case to *Carbajal* and our recent opinion in *City of San Antonio v. Tenorio*,[14] the City says subjective knowledge of its fault is lacking as a matter of law. The City, supported by the State of Texas as amicus curiae, also objects to abrogating our precedent because it correctly construes the Tort Claims Act's notice provisions. Citing the doctrine of legislative acceptance, the State also contends the Legislature has acquiesced to the Court's interpretation by not changing the actual-notice statute despite the fact that *Cathey* has been applied in hundreds of cases over the past twenty-four years, the Tort Claims Act has been amended in other respects, and at least one other statute was enacted to alter a core holding in *Simons*.

---

[14] 543 S.W.3d 772 (Tex. 2018).

## II. Discussion

### A. The Tort Claims Act Requires Prompt Notice

Under the common law, municipalities like the City of Killeen are immune from suit and liability for damages arising from the performance of governmental functions absent a clear and unambiguous legislative waiver of immunity.[15] The Texas Tort Claims Act waives immunity for certain tort claims, including premises defects, "to the extent of liability" under the Act.[16] Here, neither the City's immunity nor the statutory waiver of immunity is at issue. Rather, this appeal focuses on satisfaction of the Act's notice requirement—a jurisdictional prerequisite to suit.[17]

Section 101.101 of the Act requires that either formal or actual notice precede the filing of any lawsuit against a governmental unit:

> (a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:
>
> > (1) the damage or injury claimed;
> > (2) the time and place of the incident; and
> > (3) the incident.
>
> (b) A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.

---

[15] TEX. GOV'T CODE § 311.034; *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146-47 (Tex. 2018); *Oncor Elec. Delivery Co. v. Dall. Area Rapid Transit*, 369 S.W.3d 845, 849 (Tex. 2012) ("[A] waiver of governmental immunity must be clear and unambiguous.").

[16] TEX. CIV. PRAC. & REM. CODE §§ 101.022, .025; *County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002) (quoting *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000), which interprets section 101.021 of the Tort Claims Act).

[17] *See* TEX. CIV. PRAC. & REM. CODE § 101.101; TEX. GOV'T CODE § 311.034.

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.[18]

The relatives do not dispute that compliance with subsection (a) is lacking and do not address subsection (b), but those "requirements . . . do not apply" when subsection (c) is satisfied, as the relatives assert here.

Nearly a quarter century ago, we construed subsection (c)'s actual-notice exception in *Cathey v. Booth*.[19] *Cathey* involved a medical-malpractice suit against a county hospital, and the only evidence the relatives presented to prove the hospital's actual notice was an expert opinion formed on the basis of information included in the patient's medical records.[20] We held that the medical records were insufficient to establish the hospital's knowledge of its possible culpability and held that actual notice exists only when the governmental unit has "knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved."[21]

In applying the statute, we explicitly rejected an interpretation of "actual notice" that would "require[] only that a governmental unit have *knowledge* that a death, an injury, or property damage ha[d] occurred."[22] For a hospital, such a facile reading of the statute would be tantamount to "having

---

[18] TEX. CIV. PRAC. & REM. CODE § 101.101.

[19] 900 S.W.2d 339, 341 (Tex. 1995).

[20] *Id.* at 341-42.

[21] *Id.*

[22] *Id.* at 341 (emphasis added).

no notice requirement at all," because it would "impute actual *notice* to a hospital from [mere] *knowledge* that a patient received treatment at its facility or died after receiving treatment."[23] This would "eviscerate" the purpose of requiring prompt reporting of claims, which "enable[s] governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial."[24] Construing the statute to set a standard as low as the plaintiffs had advocated was facially problematic because it would effectively require hospitals "to investigate the standard of care provided to each and every patient that received treatment."[25]

As we would come to observe a decade later in *Texas Department of Criminal Justice v. Simons*, "[t]he problems involved in identifying incidents that involve a governmental unit's fault are common to hospitals but not unique to them."[26] In *Simons*, we elaborated on *Cathey*'s articulation of "actual notice" as requiring "knowledge of its alleged fault producing or contributing to the death, injury, or property damage."[27] In that case, an inmate sued the Texas Department of Criminal Justice for personal injuries he suffered while working with a prison work crew under a correction officer's supervision.[28] The department's investigation of the incident shed no light on how it happened.[29] When interviewed by investigators, the inmate repeatedly stated and affirmed

---

[23] *Id.* (emphasis added).

[24] *Id.*

[25] *Id.*

[26] 140 S.W.3d 338, 345 (Tex. 2004).

[27] *Id.* at 339 (quotation marks omitted).

[28] *Id.*

[29] *Id.* at 340.

his belief that no one was at fault.[30]  He later sued the department, but did not give formal notice of his claim.[31]

We held the department's investigation was insufficient to confer actual notice because the department had no "subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury."[32]  We explained that if a governmental unit did not have subjective awareness linking the alleged injury to alleged fault on the government's part, the governmental unit would not be on notice to gather information, defeating the purpose of requiring prompt notice.[33]  We thus noted, "It is not enough that a governmental unit should have investigated an incident as a prudent person would have, or that it did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might have been at fault."[34]  Rather, the requirement of actual notice means that "[i]f a governmental unit is not subjectively aware of its fault [as ultimately alleged], it does not have the same incentive to gather information that the statute is designed to provide, even when it would not be unreasonable to believe that the governmental unit was at fault."[35]

---

[30] *Id.* at 341-42.

[31] *Id.* at 342.

[32] *Id.* at 347.

[33] *Id.* at 348.

[34] *Id.* at 347-48.

[35] *Id.* at 348.

Both *Cathey* and *Simons* have long been settled law, and in a handful of cases over the years, we have further defined the contours through application to different fact patterns.

A recurrent theme in our jurisprudence is the importance of notice as a means of alerting governmental entities of the need to investigate claims. But prompt notice also has other benefits. Promptly connecting the governmental unit's conduct to an injury allows for swift abatement of dangerous conditions or practices, fosters early termination of litigation through settlement of meritorious claims, and provides sufficient notice of potential claims to enable governmental entities to make proper budgeting and tax decisions. The legislative "purpose" for requiring prompt notice is not expressed in the Tort Claims Act, but the notice requirement must have at least *some* purpose because "the legislature is never presumed to do a useless act."[36] Whatever the intended purpose, prompt notice has several obvious benefits that align with the Act's structural provisions limiting the potential liability of public entities, and none of the most obvious benefits are served if a governmental unit is not subjectively aware that its alleged acts or omissions contributed to or produced injuries in the way the claimant ultimately alleges.

When the facts do not even *imply* the governmental unit's fault, they are legally insufficient to provide actual notice. One of the cases the City heavily relies on here is *City of Dallas v. Carbajal*.[37] In *Carbajal*, the plaintiff sued the City of Dallas for injuries she sustained after driving onto an excavated road.[38] A Dallas police officer who responded to the accident filed a written

---

[36] *Hunter v. Ft. Worth Capital Corp.*, 620 S.W.2d 547, 551 (Tex. 1981); *see Sneed v. Webre*, 465 S.W.3d 169, 182 (Tex. 2015).

[37] 324 S.W.3d 537 (Tex. 2010).

[38] *Id.* at 538.

11

report, stating the plaintiff said "she saw the barricades but none were blocking what she thought was a clear way" and indeed "there were no barricades blocking the gap in the road."[39] The report concluded the plaintiff drove her "vehicle into a gap in the street that was not properly blocked."[40]

In holding the police officer's report was legally insufficient to prove actual notice under section 101.101(c), we observed the report was "no more than a routine safety investigation" that only "describe[d] what apparently caused the accident (missing barricades)" and "did not even imply, let alone expressly state, that the City was at fault."[41] The report noted missing barricades as a factor, but did not say who had failed to erect or maintain the barriers.[42] Accordingly, we held the report was insufficient to put the city on actual notice.[43]

*City of San Antonio v. Tenorio*, which also involved a traffic accident, is in a similar vein.[44] There, a robbery suspect attempting to avoid capture drove the wrong way on a public highway, causing a collision that resulted in grievous bodily injury and death.[45] A police report indicated the sole contributing factor of the collision was "Fleeing or Evading Police."[46] The police officers and

---

[39] *Id.*

[40] *Id.* (internal variations omitted).

[41] *Id.* at 539.

[42] *Id.*

[43] *Id.*

[44] 543 S.W.3d 772 (Tex. 2018).

[45] *Id.* at 774.

[46] *Id.* at 775; *id.* at 783 (Guzman, J., dissenting).

the witnesses all testified the pursuit stopped as soon as the suspect started driving against traffic.[47] The Court held that "[e]vidence that a vehicle being pursued by the police is involved in a collision is not, by itself, sufficient to raise a fact question about whether the City . . . had subjective awareness that it was in some manner at fault in connection with the collision."[48] Specifically, the Court reasoned that the governmental defendant's subjective awareness of "[its] role in producing or contributing" to the accident was not equivalent to its subjective awareness of "some *fault* on its part" as required by *Simons*.[49]

We have plainly stated, however, that a governmental unit need only achieve subjective awareness of fault "as ultimately alleged by the claimant."[50] In other words, there must be subjective awareness connecting alleged governmental conduct to causation of an alleged injury to person or property in the manner ultimately asserted. The standard is necessarily subjective, because lack of formal notice is excused only by actual, not constructive, notice. Yet at the same time,

---

[47] *Id.* at 777 (majority opinion).

[48] *Id.* at 778.

[49] *Id.* at 775, 778-79.

[50] *Tex. Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 347 (Tex. 2004). "Allege" means "[t]o assert as true, esp. that someone has done something wrong, though no occasion for definitive proof has yet occurred," and "alleged" means "asserted to be true as described" and "[a]ccused but not yet tried." BLACK'S LAW DICTIONARY 90 (10th ed. 2014); *accord id.* at 301 (defining "claim" to mean "[a] statement that something yet to be proved is true"). This requirement accords with subsection (c)'s use of the term "claimant," which means "[s]omeone who asserts a right against the government, esp. for money" and "[s]omeone who asserts a right or demand." *Id*. at 302.

subjective awareness of alleged fault requires neither adjudication of liability nor confession of fault.[51]

Take, for example, the facts in *University of Texas Southwestern Medical Center at Dallas v. Estate of Arancibia*.[52] In that case, a patient died after her bowel was perforated during a laparoscopic hernia surgery.[53] The day after the patient's death, the surgeon who was present during the surgery notified his supervisor of the outcome and contacted risk management.[54] The supervisor, after speaking with the chair of the surgery department and reviewing the treatment, concluded "a technical error occurred" during the surgical operation and "[c]linical management contributed to" the patient's death.[55] We held that the evidence was sufficient to establish the hospital had actual notice.[56] Notably, in response to the dissent, which would have concluded the hospital could not have had notice because its internal investigation found no negligence, the Court emphasized: "Fault, as it pertains to actual notice, is not synonymous with liability; rather, it implies responsibility for the injury claimed."[57]

---

[51] *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Estate of Arancibia*, 324 S.W.3d 544, 550 (Tex. 2010) ("Fault, as it pertains to actual notice, is not synonymous with liability; rather, it implies responsibility for the injury claimed."); *id.* ("'[F]ault' as required under *Simons* is not fault as defined by *the defendant*, but rather 'as ultimately alleged by *the claimant*.'" (quoting *Simons*, 140 S.W.3d at 347)).

[52] *Id.* at 546.

[53] *Id.*

[54] *Id.* at 549.

[55] *Id.* (alteration in original).

[56] *Id.* at 549-50.

[57] *Id.* at 550.

## B. The City of Killeen Had Actual Notice

Notice is a prerequisite to subject-matter jurisdiction[58] and, thus, a question of law we review de novo.[59] When actual-notice evidence is disputed, a fact question arises.[60] When a jurisdictional fact issue is intertwined with the merits, the court cannot grant the plea, but when the jurisdictional issue is not intertwined with the merits, we must defer to the trial court's express or implied factual determinations that are supported by sufficient evidence.[61] Often, however, actual notice can be determined as a matter of law, even "when subjective awareness must be proved, if at all, by circumstantial evidence."[62]

The relatives' pleadings do not allege facts about actual notice, but in response to the City's jurisdictional plea, they responded with evidence the City does not dispute. Because the jurisdictional evidence is undisputed, we review the actual-notice issue de novo. In determining whether the evidence establishes the City's subjective awareness of its responsibility for the accident

---

[58] TEX. CIV. PRAC. & REM. CODE § 101.101; TEX. GOV'T CODE § 311.034.

[59] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

[60] *Tex. Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 348 (Tex. 2004).

[61] *See Miranda*, 133 S.W.3d at 226-28 (subject-matter jurisdiction is a question of law, but when jurisdictional facts also implicate the merits of the case and disputed evidence raises a fact issue, the trial court cannot grant the plea to the jurisdiction); *cf. BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (personal jurisdiction is a question of law; we defer to trial court findings supported by legally and factually sufficient evidence but legal conclusions drawn from facts are reviewed de novo).

[62] *Simons*, 140 S.W.3d at 348; *see Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex. 2002) (noting state of mind "must usually . . . be proved by circumstantial evidence"); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994) (noting "the practical difficulty of producing direct evidence" of a party's mental state).

15

as ultimately alleged by the relatives, we begin by noting that the relatives bear the initial burden of affirmatively demonstrating the trial court's subject-matter jurisdiction.[63]

To that end, the record establishes that, almost immediately after the accident, the City was subjectively aware of allegations that (1) the road condition and the absence of warning signs were contributing factors to the accident and (2) the City was responsible for maintaining the road. The issue is not whether the City *should have* made the connection between injury and responsibility as alleged, but whether the City made the connection or had knowledge that the connection had been made. Well within section 101.101's six-month notice deadline, the City knew of allegations that it was responsible for maintaining a road and that the failure to maintain the road had been identified as a contributing factor to the injuries that provide the basis for this lawsuit. Whether the City believed it was liable or not is not the standard. Mindful of the distinctive fact patterns encompassed by our section 101.101(c) precedent, we conclude this case is more like *Arancibia*, in which actual notice was established, than *Carbajal*, in which formal and actual notice were both lacking.

City of Killeen officials from key departments participated in the investigation of the motorcycle accident, including engineering, street works, and legal. The city inspector conceded the City was aware that the road had been blocked for at least two years, but had refused to remove the dirt pile because city officials believed the road was "not owned or maintained by the City." This denial of jurisdiction led the accident investigator to the deputy city attorney, whose own investigation confirmed the City's annexation of the road, but not its legal abandonment. Thus, the City's reason for leaving the roadway obstructed was negated as soon as the City's legal counsel was

---

[63] *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).

16

unable to locate a document disproving the City's ownership of the road. The relatives are not required to provide evidence of the City's explicit "confession of fault"—an insurmountable burden we explicitly rejected in *Arancibia*.[64]

We agree with the relatives that the wide-ranging post-accident investigation distinguishes this case from *Carbajal*. Though both the court of appeals and the City cite *Carbajal* as involving circumstances similar to this case, any comparison is limited to the fact that both cases involve allegations that defective road conditions caused a traffic accident. But unlike this case, the evidence of actual notice in *Carbajal* was limited to a one-page report that disclosed only that a vehicle ran into a street that lacked proper barricades.[65] It "[did] not say who failed to erect or maintain the barricades."[66] In contrast, the crash investigation report here and the investigating officer's deposition testimony reveal a much more thorough investigation, demonstrating an effort among various City departments to track down whether the City was charged with maintaining the road and remediating the hazard. The record firmly establishes the City's knowledge connecting its alleged ownership and control of the road to the road conditions identified as contributing to Worsdale's and King's deaths.

*Tenorio* is likewise distinguishable. Consistent with *Carbajal*, the Court's disposition in *Tenorio* turned on the City of San Antonio's "subjective awareness" of its "fault" "in some manner"

---

[64] *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Estate of Arancibia*, 324 S.W.3d 544, 550 (Tex. 2010).

[65] *City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010).

[66] *Id.* at 539.

17

"in connection with the collision."[67] The Court concluded that a police report noting only that the sole contributing factor was "Fleeing or Evading Police," did not necessarily imply or allege fault on the government's part.[68] While the police are duly charged with pursuing suspects when necessary, the evidence did not show any manner of fault had been identified beyond the suspects's unilateral decision to flee and evade capture. The Court concluded no evidence assigned putative fault to the police or suggested that the police department subjectively determined "that they were in some manner responsible for the injuries."[69] Here, however, a dirt pile completely obstructing an otherwise open road is itself a defect, or a "fault," that is necessarily attributable to someone. And, as the evidence shows, this investigation went beyond the direct cause of the collision and instead delved into whether the City was charged with maintaining the road.

Further, after the City learned about its alleged responsibility for the road's condition, the City promptly remediated the hazard. Evidence of subsequent remedial measures is inadmissible to prove liability but admissible for other purposes, including to prove ownership, control, and notice.[70] We are not concerned that considering this evidence would discourage remediation of hazards. Rather, consistent with the Tort Claims Act's limited immunity waiver, prompt notice

---

[67] *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 778 (Tex. 2018).

[68] *Compare id., with Carbajal*, 324 S.W.3d at 539 ("[T]he report here did not provide the City with subjective awareness of fault because it did not even imply, let alone, expressly state, that the City was at fault.").

[69] *Tenorio*, 543 S.W.3d at 778.

[70] TEX. R. EVID. 407 & cmt. (evidence of subsequent remedial measures is admissible for purposes other than to prove negligence, culpable conduct, product defect, or the need for a warning or instruction, but use for "another purpose" is permitted if not otherwise barred by general principles of admissibility, including relevancy, hearsay, and unfair prejudice).

allows governmental units to expeditiously abate hazardous conditions and practices so that further exposure to liability can be avoided altogether.

Viewed in totality, the facts here conclusively establish the City's subjective awareness of its fault "as ultimately alleged by the [relatives]." The critical inquiry is the governmental unit's actual anticipation of an alleged claim rather than subjective confirmation of its actual liability.

### C. *Cathey* Remains Valid Precedent

In light of our holding that the City had actual notice under the standards articulated in *Cathey* and its progeny, this appeal's disposition does not hinge on the relatives' alternative argument that *Cathey* was wrongly decided and should be overruled. As to that matter, the relatives complain that *Cathey* and its progeny alter section 101.101(c)'s plain text by importing extra-textual requirements—specifically, the governmental unit's "subjective awareness" of "fault" "as ultimately alleged" by the plaintiff. Notwithstanding *Cathey*'s status as established precedent, the relatives cite various factors to justify abrogating our section 101.101(c) precedent. The City and the State of Texas, as amicus curiae, vigorously oppose overturning *Cathey* and its progeny, chiefly on the basis that *Cathey* properly construes the notice statute's text as a whole and duly rejects an unreasonably simplistic reading of the statute that would vitiate the notice requirement altogether.

Just last term, a dissenting opinion in *Tenorio* likewise advocated that we overrule *Cathey*, but we expressly declined to do so.[71] The Court's composition has changed since we issued *Cathey*, repeatedly reaffirmed it, and specifically rejected the invitation to disavow it in *Tenorio*. But "an

---

[71] *Tenorio*, 543 S.W.3d at 780 ("We decline to overrule *Cathey*.").

19

appellate court's decisions should not change merely because the judges have changed"[72] and stare decisis has its "greatest force" in matters of statutory construction.[73] The proper construction of the Tort Claims Act's notice provision presents a question of law that need not be resurrected and revisited every term to effect a final disposition of the matter. Nevertheless, as the issue was raised *sua sponte* in *Tenorio* but is fully briefed here, we take this opportunity to further expound on the topic and, once again, decline to overrule *Cathey*.[74]

The relatives and today's concurring opinion reurge the same argument we explicitly considered and rejected in *Cathey*—namely, that actual notice exists whenever a governmental unit has notice of any death, injury, or property damage.[75] Plain and simple. Now, as then, we disagree. To construe the Tort Claims Act's notice provision so superficially would require blinders. Giving section 101.101(c) the meaning the relatives and the concurrence champion would effectively render section 101.101(a) and (b)'s formal-notice requirements a dead letter by converting the exception into the rule and eliminating any deadline for providing notice. In short, the exception would engulf the rule and would be satisfied whenever the lawsuit is filed.

---

[72] *Sw. Bell Tel. Co. v. Mitchell*, 276 S.W.3d 443, 448 (Tex. 2008); *see* BENJAMIN N. CARDOZO, THE NATURE OF THE JUDICIAL PROCESS 150 (1921) ("The situation would . . . be intolerable if the [periodic] changes in the composition of the court were accompanied by changes in its rulings. In such circumstances there is nothing to do except to stand by the errors of our brethren of the [time] before, whether we relish them or not.").

[73] *Mitchell*, 276 S.W.3d at 447.

[74] Today's concurring opinion complains that the Court "unnecessarily and improperly proceeds to address and reject" the invitation to overrule *Cathey* even though the concurring opinion's author took it upon himself to raise *and substantively address* the issue in *Tenorio*. *Post* at 2-3 (BOYD, J., concurring). Irony aside, the concurrence's author fails to recognize that, at his behest, we have already decided the merits of overruling *Cathey* in *Tenorio*, a case in which that decision mattered and was not dicta. *See Tenorio*, 543 S.W.3d at 780; *see also post* at 8 (BOYD, J., concurring) (noting he had "thoroughly addressed in *Tenorio*" the reasons for overruling *Cathey*).

[75] *See Cathey*, 900 S.W.2d 339, 341 (Tex. 1995).

20

"Statutes cannot be read intelligently if the eye is closed to considerations evidenced in affiliated statutes."[76]  As we have so often said, text cannot be divorced from context.[77]  We generally "rely on the plain meaning of a statute's words" to discern legislative intent,[78] but we cannot construe the Legislature's chosen words and phrases in isolation.[79]  That is, we must "consider the context and framework of the entire statute" and construe it as a whole.[80]  The relatives and the concurrence urge a construction of section 101.101(c) that ignores the notice statute's structure, fails to accord meaning to the precise words the Legislature chose, and violates the "related-statutes" canon.[81]

In section 101.101, two notice provisions work in tandem—the formal-notice requirements in subsections (a) and (b) and the actual-notice exception in subsection (c):

(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred.  The notice must reasonably describe:

(1) the damage or injury claimed;
(2) the time and place of the incident; and
(3) the incident.

---

[76] Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 COLUM. L. REV. 527, 539 (1947).

[77] *See, e.g.*, *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011).

[78] *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017).

[79] *Id.* at 326.

[80] *Id.*

[81] *Branch v. Smith*, 538 U.S. 254, 281 (2003) (plurality opinion) ("And it is, of course, the most rudimentary rule of statutory construction . . . that courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part . . . ."); *U.S. v. Freeman*, 44 U.S. 556, 564 (1845) ("[I]t is an established rule of law[] that all acts *in pari materia* are to be taken together, as if they were one law.").

(b) A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.[82]

The State argues that subsection (a) defines "notice" as "notice of a claim" for all purposes in section 101.101 including subsection (c)'s "actual notice" exception. The State further notes a symbiotic relationship necessarily exists between subsections (a) and (c) because the latter includes no deadline and, without incorporating the time limit in subsection (a), would be satisfied the moment suit was filed even years down the road—a result the Legislature could not have intended in enacting both subsections (a) and (c).

We agree that the express use of coordinate language in subsections (a) and (c) and the structural relationship between the two—as rule and exception—cannot be ignored in discerning legislative intent. Though not a definition in a strict sense, "actual notice" in subsection (c) essentially replicates subsection (a)'s "notice of a claim" requirement because subsection (c) tethers actual notice to injuries suffered by a "claimant." A "claim" is "[a] statement that something yet to be proved is true," "[t]he assertion of an existing right," or "[a] demand for money, property, or a legal remedy to which one asserts a right," and a "claimant" is "[s]omeone who asserts a right or demand."[83] Perhaps most significantly from a plain-meaning standpoint, the term "notice," in and of itself, refers to a "warning" of something "impending," especially "to allow preparations to be

---

[82] TEX. CIV. PRAC. & REM. CODE § 101.101.

[83] BLACK'S LAW DICTIONARY 301-02 (10th ed. 2014).

22

made."[84]  And the necessity of "subjective awareness" accords with the plain meaning of the term "actual" as "existing in act or fact," rather than merely constructive.[85]

Subsection (c) does not require that the governmental unit know that the claimant has actually made an allegation of fault,[86] but use of the term "claimant" necessarily refers to information identifying *which* loss.  The statutory language, construed together rather than in isolation, requires not only knowledge of some harm but also information sufficient to (1) identify the particular loss ultimately alleged and (2) alert the governmental unit to something impending—for any number of reasons, but especially to allow preparations to be made.[87]  The Court's construction of section 101.101(c)—as articulated here and in our precedent—accords with the plain meaning of its key terms and gives effect to the statute as a cohesive whole.[88]  Today's concurring opinion does not.

---

[84] WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1326 (2d ed. 1996); NEW OXFORD AMERICAN DICTIONARY 1200 (3d ed. 2010).

[85] WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 21 (2d ed. 1996).

[86] *Tex. Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 339, 347 (Tex. 2004).

[87] *Id.* ("actual notice" requires "knowledge that *amounts to* the same notice to which it is entitled by section 101.101(a)" including "subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury" (emphasis added)).

[88] *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 779 (Tex. 2018) (finding no evidence that the governmental unit had subjectively connected its alleged fault to the alleged injuries, "[no] evidence that the City was subjectively aware that its fault produced or contributed to the injuries . . . ."); *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Estate of Arancibia*, 324 S.W.3d 544, 550 (Tex. 2010) ("[F]ault, as it pertains to actual notice, is not synonymous with liability; rather, it implies responsibility for the injur[ies]" as ultimately alleged by the claimant.); *City of Dallas v. Carbajal*, 324 S.W.3d 537, 539 (Tex. 2010) (requiring subjective awareness of alleged fault producing or contributing to death, injury, or property damage); *Simons*, 140 S.W.3d at 347 ("[A]ctual notice . . . includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the injury."); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) ("[A]ctual notice to a governmental unit requires knowledge of . . . the governmental unit's alleged fault producing or contributing to the death, injury, or property damage. . . .").

23

While complaining that *Cathey* diverges from the statutory text, the concurrence makes no attempt to give meaning to any of subsection (c)'s key terms, fundamentally fails to comprehend that words encapsulate concepts, and conflates the statutory mandate of "notice" with bare knowledge. The concurring justices avoid grappling with the actual text of the statute by repeatedly rewriting the statute to omit its key terms—"notice" and "claimant"—and by merely quoting those words instead of giving them meaning.[89] Because those terms cannot be given any meaning other than their plain and ordinary meaning, the concurrence ignores the former entirely and dismisses the latter as mere surplusage.[90]

The best the concurrence can offer is the circular tautology that "even if 'notice' means something other than 'knowledge'" it only means "actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged."[91] But the question the concurrence leaves conspicuously unanswered is what it means to have *actual notice* of those things. Instead of "actual notice," the concurrence reads section 101.101(c) as requiring only constructive or inquiry notice based solely on knowledge that death, injury, or damage has

---

[89] *See generally post* (Boyd, J., concurring); *Tenorio*, 543 S.W.3d at 786, 791-92 (BOYD, J., dissenting) (stating, for example, that subsection (c) applies "if the governmental unit has 'actual notice' of the death, injury, or property damage on which the claim is based"; section 101.101 requires formal notice "*unless* the governmental unit has actual notice of the death, injury, or property damage on which that claim is based"; subsection (c)'s "purpose" includes "[r]equiring the governmental unit to have actual notice of the death, injury, or damage").

[90] *Post* at 7 (BOYD, J., concurring) ("[T]he statute's reference to the 'claimant' merely recognizes that there will always be a 'claimant' by the time subsection (c)'s actual-notice requirement becomes relevant."). *But see Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 491 (Tex. 2017) ("We construe statutes so that no part is surplusage, but so that each word has meaning.").

[91] *Post* at 7 (BOYD, J., concurring).

24

occurred.[92] This standard is repugnant to the statute's express language. The words the Legislature actually enacted and declared to be the law necessarily encompass the concept of warning of alleged fault, conferred either by notice from the claimant or through the government's own actual awareness of the facts.

Narrowly focusing on the statement in subsection (c) that the "requirements" in subsections (a) and (b) "do not apply," the concurrence construes subsection (c) to mean that a governmental unit would have actual notice even though it knew nothing about the incident—who, what, where, when—as long as it knew of some loss. But the concurrence is reading subsection (c)'s words out of context and misconstrues what subsection (a) actually requires. Subsection (a) says the governmental unit is "entitled to receive" "notice of a claim" that "reasonably describe[s]: (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident."[93] Subsection (c) says that when a governmental unit has "actual notice," it is no longer *entitled to receive a reasonable description* of the claim, but that does not mean that "actual notice" does not require subjective awareness of *facts that amount to the same*.[94] Rather, the Legislature has recognized that when a governmental unit already knows enough about an incident to have "actual notice," it would be pointless to *also* require the claimant to provide a description of the claim. If the actual-notice exception in subsection (c) were read as sparingly as the relatives and the concurrence propose, claimants would lack any incentive to comply with subsection (a)'s

---

[92] *Id.* at 6.

[93] TEX. CIV. PRAC. & REM. CODE § 101.101(a) (emphasis added).

[94] *See Tex. Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 347 (Tex. 2004).

comparatively more rigorous formal-notice requirements because they could simply rely on a governmental unit's bare knowledge of the limited range of facts enumerated in subsection (c). Simply stated, that an injury occurred. This construction turns the statute on its head, converting the exception into the rule.

Construing the actual-notice exception contrary to its plain meaning and without regard to its context would also produce absurd results.[95] Many governmental units may, in the ordinary course of events, have knowledge of deaths, injuries, or property damage but no warning—"notice"—that a lawsuit might eventually be filed alleging the governmental unit was responsible in some way, shape, or form.[96] Traffic accidents on Texas roadways immediately spring to mind. Enforcement of state laws by peace officers—a situation we confronted last year in *Tenorio*—is another ready example.[97] Even something as simple as reading an obituary. But mere knowledge that something happened somewhere to someone or something would hardly ever be enough to alert a governmental unit of alleged wrongdoing and the necessity of mounting a defense.

The absurdity of equating knowledge of elemental facts to actual notice of a claim—as the concurrence does without any analysis of the statute's language—is acutely illustrated by the circumstances presented in *Cathey*. As we explained there, injury and death are quotidian in hospitals, rendering the proffered construction of subsection (c) "the equivalent of having no notice

---

[95] *See* TEX. GOVT. CODE § 311.023(5) (in construing a statute, the "consequences of a particular construction" may be considered).

[96] *Simons*, 140 S.W.3d at 344-45 (observing that "[t]he problems involved in identifying incidents that involve a governmental unit's fault are common to hospitals but not unique to them" and "nothing in section 101.101 suggests that there should be one rule for hospitals and a different one for other governmental units").

[97] *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 774 (Tex. 2018) (police officer pursuit of robbery suspect).

requirement at all."[98]  If the only facts necessary to confer actual notice were that treatment and injury occurred, "[a] hospital would be required to investigate the standard of care provided to each and every patient that received treatment" because it otherwise would not know which injuries allegedly resulted from the hospital's wrongs or even what outcomes the patient contends are injuries.[99]  Some might be obvious; many will not.

Take the circumstances in *University of Texas Southwestern Medical Center at Dallas v. Loutzenhiser*, in which a child was born with a birth defect months after the hospital conducted prenatal testing.[100]  The parents notified the hospital of the birth defect—the injury—but did not inform the hospital that prenatal testing was the suspected cause.[101]  Hospitals are innately epicenters of unhappy outcomes of varying degrees.  There is no warning in mere knowledge of that fact.

"Notice" requires more than mere knowledge that a baby was born with a birth defect, as in *Loutzenhiser* (there are more than 24,000 such occurrences every year in Texas),[102] or that a car accident happened, as in *Carbajal* (in 2017, 500,000 car crashes resulted in death or injury to more than 250,000 people and billions of dollars in economic losses),[103] and certainly not that someone

---

[98] *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

[99] *Id.*

[100] 140 S.W.3d 351, 354 (Tex. 2004).

[101] *See id.* at 354, 357-58.

[102] *See* Tex. Dep't of State Health Servs., *About Birth Defects in Texas* (May 14, 2019), https://www.dshs.texas.gov/birthdefects/about.shtm (last accessed June 11, 2019).

[103] *See* Tex. Dep't of Transp., *Texas Motor Vehicle Crash Statistics–2017*, https://www.txdot.gov/government/enforcement/annual-summary.html (last accessed June 11, 2019).

died (a total of 189,166 Texas residents in 2015).[104]  Governmental units keep statistics on all manner of occurrences.  That is knowledge, not notice.  Consistent with the plain meaning of the statutory language, the Tort Claims Act's notice provision requires knowledge that rises to the level of notice, which has the effect—if not the purpose—of "enable[ing] governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial."[105]

Construing statutes to avoid "glaringly absurd" results "has long been a judicial function."[106]  So, even assuming the actual-notice exception could be contextually construed as carrying such trifling force—and it cannot—affording the statute an unreasonable meaning runs counter to bedrock statutory construction principles[107] and is inconsistent with "a realistic assessment of what the legislature ought to have meant."[108]

On that point, the context of the notice provision as a jurisdictional prerequisite to an immunity waiver is just as critical.  A cramped reading of the statute would effectively force governmental units to fully investigate any occurrence even when unnecessary.  But needlessly expending scarce public resources when the governmental unit will never be sued is the antithesis

---

[104] Tex. Dep't of State Health Servs., *Table 15: Deaths by Public Health Region, County & City of Residence Texas, 2015*, https://www.dshs.texas.gov/chs/vstat/vs15/t15t.aspx (last accessed June 11, 2019).

[105] *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

[106] *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 333 (1938).

[107] *See, e.g.*, TEX. GOV'T CODE § 311.021 ("In enacting a statute, it is presumed that . . . a just and reasonable result is intended."); *Sneed v. Webre*, 465 S.W.3d 169, 182 (Tex. 2015) ("[T]he Legislature is never presumed to do a useless act.").

[108] *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 252 (2012) (noting the related-statutes canon is "based upon a realistic assessment of what the legislature ought to have meant").

of governmental immunity's core function and an ironically paradoxical interpretation of a statute with carefully considered limitations on the Legislature's waiver of immunity.[109]

To be sure, separation-of-powers implications compel us to adhere to the plain text of a statute rather than make policy decisions.[110] But enforcing a statute's plain language does not mean employing a "bloodless literalism in which text is viewed as if it had no context."[111] Our section 101.101(c) precedent ascribes meaning to the statute's language that comports with a plain reading of its key terms and is the only reasonable construction of the statute when construed as a whole and in the immunity-waiver context.

If there were ever any concern that *Cathey* and its progeny are not faithful to legislative intent as expressed in the statutory text, it has assuredly evaporated over time. Nearly a quarter century has elapsed since we issued *Cathey*, and its core holding has been applied hundreds of times—only a handful of which have involved substantive review by this Court.[112] Amplified by

---

[109] *Cf. Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012) ("We have observed that in order to allow the Legislature to protect not only its policy-making function but also to preserve its interest in managing state fiscal matters, this Court consistently defers to the Legislature to waive immunity from suit.").

[110] *See City of San Antonio v. Tenorio*, 543 S.W.3d 772, 786-88 (Tex. 2018) (BOYD, J., dissenting).

[111] *W. Anderson Plaza v. Feyznia*, 876 S.W.2d 528, 532 (Tex. App.—Austin 1994, no writ); *see Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 572 (Tex. 2014) (Willett, J., concurring) ("Judges must navigate a narrow course 'between a sterile literalism which loses sight of the forest for the trees, and a proper scruple against imputing meanings for which the words give no warrant.'" (quoting *N.Y. Trust Co. v. Comm'r of Internal Revenue*, 68 F.2d 19, 20 (2d Cir. 1933))).

[112] *Tenorio*, 543 S.W.3d at 776-80; *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Estate of Arancibia*, 324 S.W.3d 544, 548-50 (Tex. 2010); *City of Dallas v. Carbajal*, 324 S.W.3d 537, 337-39 (Tex. 2010); *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004); *Tex. Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 343-48 (Tex. 2004); *see also City of San Antonio v. Johnson*, 140 S.W.3d 350, 351 (Tex. 2004) (issued the same day as *Simons* and noting the lower court applied an incorrect standard, but denying the petition for review because the parties could reassert the dismissal motion); *Blevins v. Tex. Dep't of Transp.*, 140 S.W.3d 337, 337 (Tex. 2004) (issued the same day as *Simons* and noting the lower court correctly concluded notice was lacking on the record before the court, but granting the petition and remanding to allow the parties to develop the record in light of *Simons*).

the passage of time—and in view of other changes the Legislature has made to the Tort Claims Act

in the interim—the sound of legislative silence has become deafening.[113]

In declining to overrule *Cathey* in *Tenorio*, the Court explored the stare decisis and

legislative acceptance doctrines, so we will not belabor those points here. It suffices to reiterate that

stare decisis advances important interests—efficiency, fairness, predictability, and judicial

integrity—and has "special force" in the construction of statutes precisely because the Legislature

can readily course correct.[114] As we explained long ago:

> [T]o overrule a court's uniform interpretation of a statute which has persisted over
> a long period of years as evidenced by numerous decisions, is very like amending a
> statute. That is why the rule of stare decisis is highly binding in [the statutory
> construction] field. A series of holdings by a court of last resort should operate as
> an axiom or new starting point, so to speak, and if a reexamination of all decisions
> is to be made upon all occasions, the rule will serve no purpose and there would be
> no certainty in the law.[115]

---

[113] Over the years, the Legislature has never taken any action to overturn *Cathey*. The Legislature's inaction is all the more notable considering that the Legislature was moved to alter the holding in *Simons* and *Loutenhizer* that "section 101.101 is not jurisdictional" in the immediately following legislative session. *Simons*, 140 S.W.3d at 349 (citing *Loutzenhiser*, 140 S.W.3d at 365); *see* TEX. GOV'T CODE § 311.034; Act of May 25, 2005, 79th Leg., R.S., ch. 1150, sec. 1, 2005 Tex. Gen. Laws 3783, 3783; Senate Comm. on State Affairs, Bill Analysis, Tex. H.B. 2988, 79th Leg., R.S. (2005) ("Compliance with the statutory prerequisites to filing suit is often an issue in litigation, and considerable confusion has arisen in the courts regarding whether such compliance is a jurisdictional matter or not.").

[114] *See Weiner v. Wasson*, 900 S.W.2d 316, 320 (Tex. 1995); *see also California v. Fed. Energy Reg. Comm'n*, 495 U.S. 490, 499 (1990) (observing deference must be accorded "to longstanding and well-entrenched decisions, especially those interpreting statutes that underlie complex regulatory regimes. Adherence to precedent is, in the usual case, a cardinal and guiding principal of adjudication, and '[c]onsiderations of *stare decisis* have special force in the area of statutory interpretation, for . . . unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done."); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 255 (2012).

[115] *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 193 (Tex. 1968).

30

Though stare decisis is not an impenetrable barrier, we should not overrule precedent absent a compelling reason.[116] We find none here.

Relying on outdated hyperbole,[117] the concurrence presses us to depart from the entirety of our actual-notice precedent, asserting—without any analysis—that it has engendered "confusion and uncertainty."[118] The concurrence attempts to manufacture confusion by suggesting that "potential responsibility" and "alleged fault" are different standards, such that any articulation using variants of the former are inconsistent with variants of the latter.[119] The concurrence's asserted befuddlement is linguistically disingenuous because those phrases employ synonymous terms, as any dictionary can attest.[120] We have consistently made clear that *actual* notice does not mean *potential* notice and that to actually be on notice, the governmental unit must be subjectively aware of fault in the way alleged, meaning potential responsibility.[121] The concurrence isolates a single sentence from

---

[116] *See Weiner*, 900 S.W.2d at 319-20 ("[W]e have, on occasion and for compelling reasons, overruled our earlier decisions."); *Mitchell v. Mitchell*, 303 S.W.2d 352, 355 (Tex. 1957) (abrogating precedent occurs only when "our prior decision was not sound, and [] good reasons exist for overruling it").

[117] *See post* at 4-5 (BOYD, J., concurring) (making the conclusory assertion that confusion exists but making no effort to explain or justify the assertion); *Tenorio*, 543 S.W.3d at 795-96 & nn.14-17 (BOYD, J., dissenting) (citing *Simons* and *Arancibia* as noting confusion in the lower courts before *Simons*).

[118] *See post* at 4-5 (BOYD, J., concurring) (citing and quoting *Tenorio*, 543 S.W.3d at 794 & 798 (BOYD, J. dissenting)).

[119] *See id.* at 6-7.

[120] *See supra* n.50; *see also, e.g.*, WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 55 & 1514 (2d ed. 1996) (defining "fault" as "responsibility for failure or a wrongful act" and "potential" as "possible, as opposed to actual" and "capable of being or becoming"); NEW OXFORD AMERICAN DICTIONARY 631 & 1368 (3d ed. 2010) (same); The AMERICAN HERITAGE COLLEGE DICTIONARY 498 & 1070 (3d ed. 2000) (same); *cf.* BRYAN A. GARNER, GARNER'S MODERN ENGLISH USAGE 81 (4th ed. 2016) ("*[A]t fault* is commonly used in the sense 'responsible for a wrong committed; blameworthy.'").

[121] *See, e.g.*, *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 776 (Tex. 2018) ("actual notice" is not satisfied merely because a governmental unit "should have investigated" or "should have known" it might be at fault); *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Estate of Arancibia*, 324 S.W.3d 544, 550 (Tex. 2010) ("Fault, as it pertains to actual

31

*Tenorio* to distort the Court's analysis and true holding, which was that the evidence showed, at best, that the City should have known of its fault as ultimately alleged by the plaintiffs, but did not raise a fact issue that it was actually aware of the same.[122]

As for uncertainty, that is to be expected given that a determination of actual notice, albeit a question of law, always turns on the particular facts of a case. Different facts yield different results. But avoiding uncertainty does not require a nonsensical reading of the statute. Certainty can be achieved simply by giving formal notice under section 101.101(a) and (b). And when that does not happen, claimants must live with the uncertainty that is inherent in the actual-notice exception. As we observed in *Simons*:

> We recognize that the Legislature may determine the conditions for waiving sovereign immunity from suit, and that it could make formal notice an absolute requirement, if for no other reason than to achieve a measure of certainty in the matter. But it has not done so in section 101.101. The "actual notice" exception in subsection (c), as we read it, makes determining compliance with section 101.101 somewhat less certain.[123]

The choice to adopt a less certain exception is solely the Legislature's prerogative.

---

notice, . . . implies responsibility for the injury claimed."); *Tex. Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 339, 347 (Tex. 2004) (rejecting "should have known" or "could" have known standard based on the statute's requirement of "actual notice").

[122] *Tenorio*, 543 S.W.3d at 778 ("Evidence that a vehicle being pursued by the police is involved in a collision is not, by itself, sufficient to raise a fact question about whether the City, for purposes of the [Tort Claims Act], had subjective awareness that it was in some manner at fault in connection with the collision. While the crash report listed a factor and condition contributing to the crash as 'Fleeing or Evading Police,' this is not an express statement or even an implication that the officers or the City were at fault in regard to the collision.").

[123] *Simons*, 140 S.W.3d at 348.

Bright-line rules are always in high demand, but we cannot offer them at the expense of fulfilling legislative intent—our primary directive as statutory constructionists.[124] Structurally and lexically, the Legislature manifested its intent that section 101.101(c) serve as an exception to section 101.101(a) and (b)'s formal-notice requirements. Allowing the exception to swallow the rule by failing to give the enacted language its ordinary meaning would abdicate our obligation to enforce legislative intent. And if the lack of a bright-line rule were sufficient to overturn precedent, precious little of our jurisprudence would ever be truly settled.

*Cathey* has long been settled law, no compelling reason necessitates overturning it, and as we reaffirm today, it was correctly decided in the first instance. The Court is certainly not infallible, and reasonable minds often disagree about how a statute may reasonably be construed. But if we were wrong in *Cathey*, the matter has become so settled that it is "now a policy matter for the Legislature" to address.[125]

### III. Conclusion

The Tort Claims Act's notice requirement is a jurisdictional prerequisite, not a shield against liability. Prompt notice of a claim is part of the legislative bargain for the Act's waiver of governmental immunity. Prompt notice alerts governmental units of the need to investigate claims, abate dangerous conditions, and make appropriate budgeting decisions. Consistent with the pecuniary underpinnings of governmental immunity, prompt notice enables governmental units to

---

[124] *See Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015).

[125] *Moss v. Gibbs*, 370 S.W.2d 452, 458 (Tex. 1963) (Legislature's failure to amend a statute in the twenty-six year period following this Court's definitive interpretation constituted legislative acceptance).

properly defend themselves and budget to pay claims that may not be asserted until years after a claim accrues. Absent formal notice, a claim may thus proceed against a governmental unit only if the entity had actual notice of a claim.

Actual notice means the governmental unit is subjectively aware that it may be responsible for death, injury, or property damage in the manner ultimately alleged by the claimant. This is a fact-based inquiry that may be determined as a matter of law when the facts are undisputed. In this case, the facts conclusively establish the City knew its investigators had concluded that the condition of a road under its putative jurisdiction contributed to the deaths of two travelers. This is precisely what the relatives allege in the underlying lawsuit. Accordingly, we hold the City had actual notice of a claim within the meaning of section 101.101(c) of the Tort Claims Act. We therefore reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** June 14, 2019

34