**Reverse and Dismiss; Opinion Filed November 23, 2020**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00103-CV

**CITY OF DALLAS, Appellant**
**V.**
**MICHELLE MAZZARO, Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-00842**

## MEMORANDUM OPINION

Before Justices Whitehill, Pedersen, III, and Reichek
Opinion by Justice Pedersen, III

The City of Dallas appeals the trial court's order denying its plea to the jurisdiction in Michelle Mazzaro's suit to recover damages for injuries suffered when she fell while walking on City-owned property.[1] The City contends that it is immune from Mazzaro's suit because Mazzaro did not timely serve it with the statutorily required notice of her claims and Mazzaro did not prove that the City had actual notice of her claims. The City also contends there is no waiver of immunity for Mazzaro's premise liability and general negligence claims. We reverse the trial

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (authorizing appeal of interlocutory order denying governmental unit's plea to the jurisdiction).

court's order and render judgment dismissing Mazzaro's suit for lack of subject-matter jurisdiction.

## Background

According to her petition, on January 16, 2017, Mazzaro was walking along a pathway at the Grassy Knoll in Dealey Plaza when she tripped and fell, injuring her ankle. Dallas Fire & Rescue paramedics responded to a 9-1-1 call and transported Mazzaro to the hospital.

On July 14, 2017, Mazzaro sent the City a notice of claim letter apprising it of her negligence claims against the City. The letter stated that Mazzaro's fall was caused by the defective condition of the Monument steps.[2] On January 17, 2019, Mazzaro filed suit against the City alleging that an uneven pathway—not defective steps—caused her fall and injuries. Mazzaro alleged that the City permitted a dangerous condition to exist at its premises—the uneven pathway—that posed an unreasonable risk of harm and proximately caused her injuries. She alleged that the City knew, or reasonably should have known, about this dangerous condition. She alleged that the City had duties to inspect and to warn or cure, but it breached those duties by choosing not to repair the unsafe condition of the uneven pathway on its premises. She also urged that the City was negligent in hiring, training, and

---

[2] The letter asserted a variety of deficiencies with the steps:  improper riser heights and tread widths; improper nosings, handrails, gripping surfaces, and lighting; no proper warning signs; and unsafe condition.

supervising employees who caused or failed to repair the unreasonably dangerous condition.

The City filed a plea to the jurisdiction. The City asserted it was immune from suit because Mazzaro failed to provide the City with written notice of her claims within six months of the date of the incident and such failure deprived the trial court of subject-matter jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a). The City also asserted it did not have actual notice of Mazzaro's injury claims. With respect to Mazzaro's premise liability claims, the City urged there was no waiver of immunity under the Texas Tort Claims Act ("TTCA"). The City explained that Mazzaro had not, and could not, establish a waiver of immunity because the City did not have prior actual knowledge of the allegedly dangerous condition at the location of Mazzaro's fall. Finally, the City argued that Mazzaro was limited to a premise defect theory of recovery under TTCA and could not show that her claims for negligence establish a waiver of immunity under TTCA.

In response, Mazzaro argued that the City had timely, actual notice of her claims. *See* CIV. PRAC. & REM. § 101.101(c) (stating that TTCA's notice requirements do not apply if the governmental entity has actual notice that claimant has received some injury). She asserted her statement to paramedics that her injury was caused by a drop off between the bottom step of the Monument and the grass constituted actual notice to the City. She further asserted that the City is not entitled to immunity because the City (i) knew it had a duty to maintain level pathways for

–3–

its park patrons, (ii) undertook the maintenance of such pathways, thus exhibiting its knowledge of the risk of uneven pathways, and (iii) failed to properly maintain the pathways to keep them level. She also urged that the City knew or should have known about the erosion that caused the drop off from the bottom of the steps to the ground because such erosion takes place over time. Mazzaro also argued that it could be inferred that the City had actual knowledge of this defect.

After two hearings, the trial court signed an order denying the City's plea to the jurisdiction. The City now appeals that order.

**Discussion**

In its first issue, the City asserts generally that the trial court erred in denying the City's plea to the jurisdiction. In its second, third, and fourth issues, the City presents three specific arguments to support its assertion that the trial court's decision was erroneous.

*A.  Plea to the Jurisdiction*

A plea to the jurisdiction challenges a trial court's subject-matter jurisdiction. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam). Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea, and the fact question will be resolved by the factfinder. *Id.* at

–4–

227–28. However, if the relevant evidence is undisputed or fails to raise a fact issue, the trial court rules on the plea as a matter of law. *Id*. at 228.

Under the common law, municipalities like the City of Dallas are immune from suit and liability for money damages unless the legislature has clearly and unambiguously waived immunity. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 62 (Tex. 2019). Absent a valid statutory waiver of immunity, a trial court may not assume subject-matter jurisdiction over a suit against a governmental unit. *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 775 (Tex. 2018) (citing *Ryder Integrated Logistics, Inc. v. Fayette Cty*., 453 S.W.3d 922, 926–27 (Tex. 2015)).

## B. *The Texas Tort Claims Act*

The TTCA waives the City's governmental immunity in certain limited circumstances, including for personal injury caused by a condition or use of personal or real property. CIV. PRAC. & REM. § 101.021(2) (providing for waiver of immunity for personal injury or death caused by condition or use of tangible personal or real property); *see Tenorio*, 543 S.W.3d at 775. However, this limited waiver is available only if the claimant complies with statutory notice requirements. *Worsdale*, 578 S.W.3d at 62; *see* CIV. PRAC. & REM. § 101.101; TEX. GOV'T CODE ANN. § 311.034 (statutory notice provisions are jurisdictional requirements in all suits against governmental entities). The primary purpose of the notice requirement is to ensure prompt reporting of claims to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial.

–5–

*Worsdale*, 578 S.W.3d at 63 (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam)). In *Worsdale*, the Texas Supreme Court discussed other benefits of the prompt notice requirement, noting "[p]romptly connecting the governmental unit's conduct to an injury allows for swift abatement of dangerous conditions or practices." *Id*. at 64.

The TTCA requires that either formal or actual notice precede the filing of any lawsuit against a governmental entity. CIV. PRAC. & REM. § 101.101; *see Worsdale*, 578 S.W.3d at 62. Section 101.101(a) provides that a "governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred." CIV. PRAC. & REM. § 101.101(a). Such formal notice, which must be in writing, must reasonably describe (1) the damage or injury claimed, (2) the time and place of the incident, and (3) the incident. *Id*. The written notice requirements set forth in subsection (a) do not apply if the governmental unit has actual notice that the claimant has received some injury. *Id*. § 101.101(c).

### 1.  Written Notice of Claims

The City contends there is no subject-matter jurisdiction for Mazzaro's personal injury claims under the TTCA because the City did not receive written notice of her claims within six months and because the City did not have actual notice of her injuries. We first address whether Mazzaro provided the City with timely written notice as required by section 101.101(a).

Mazzaro's fall occurred on January 16, 2017; thus, Mazzaro was required to provide written notice to the City by July 16, 2017. *See* CIV. PRAC. & REM. § 101.101(a). The record includes a copy of a letter from Mazzaro's attorney to the City, dated July 14, 2017, notifying the City of Mazzaro's intention to sue the City for injuries sustained due to the alleged defective condition of the steps at Dealey Plaza. The letter is addressed to the Dallas City Secretary and the Dallas City Attorney; copies were sent via regular mail and certified mail, return receipt requested. Also included in the record is a copy of an envelope, postmarked July 14, 2017, which designates Mazzaro's attorney as the sender, and the City as the recipient. Assuming the letter was sent on July 14, 2017, Mazzaro did not provide any evidence that the City actually received the letter on or before July 16, 2017. Both the letter and the envelope were stamped "received" by the "Dallas City Attorneys" on July 18, 2017.

The City provided an affidavit from Brent Cox, the Claims Manager for the City's Office of Risk Management.[3] Cox stated that his duties include overseeing notices of claims filed against the City by persons claiming injuries. He stated that he conducted a diligent search of the City's records for the period of January 16, 2017, through July 16, 2017. His search revealed that the City did not receive any notice of an injury claim from or on behalf of Mazzaro within that six-month period.

---

[3] Cox's affidavit was attached to the City's Plea as Exhibit 2.

–7–

When Cox expanded his search to include dates after July 16, 2017, he determined that the City received the written notice of Mazzaro's claim against the City on July 18, 2017.

Cox's testimony was corroborated by the affidavit of Molly Parks Ward, an attorney for the City, who described researching the certified mail tracking information indicated on the letter.[4] Her research on usps.com confirmed that the City received the Mazzaro's notice-of-claims letter on July 18, 2017—six months and two days after Mazzaro's fall.

"According to the plain language of the TTCA, it is the date that the City receives notice—not when the claimant sends notice—that is controlling." *Adams v. City of Dallas*, No. 05-14-01143-CV, 2015 WL 7280893, at *2 (Tex. App.—Dallas Nov. 18, 2015, no pet.) (mem. op.); s*ee* CIV. PRAC. & REM. § 101.101(a). At the December 9, 2019 hearing on the City's plea to the jurisdiction, Mazzaro argued that the City should have received her notice-of-claims letter before July 16, 2017, because it was mailed on July 14, 2017. However, she did not present any evidence that the City had actually received the notice on or before July 16, 2017. Thus Cox's affidavit that formal notice was received two days after the statutory deadline was undisputed. We conclude the evidence establishes that Mazzaro did not meet the TTCA's formal written notice requirement under section 101.101(a).

---

[4] Ward's affidavit was attached to the City's Plea as Exhibit 4.

## 2.  Actual Notice of Claims

We next consider whether there is any evidence that the City had actual notice of Mazzaro's claims. CIV. PRAC. & REM. § 101.101(c) (written notice requirement in subsection (a) does not apply if City had actual notice). For a governmental unit to have actual notice, it must have knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault that produced or contributed to the death, injury, or property damage; and (3) the identity of the parties involved. *Worsdale*, 578 S.W.3d at 63 (*citing Cathey*, 900 S.W.2d at 341). Knowledge that an injury has occurred, standing alone, is not sufficient to put a governmental entity on actual notice as required under the TTCA. *Tenorio*, 543 S.W.3d at 776 (governmental entity must have same knowledge it would have received under written notice provision). Actual notice under section 101.101(c) requires evidence that the government had knowledge of its alleged fault in causing or contributing to the claimant's injury. *See Worsdale*, 578 SW.3d at 65 ("[T]here must be subjective awareness connecting alleged governmental conduct to causation of an alleged injury to person or property in the manner ultimately asserted."). "The issue is not whether the City *should have* made the connection between injury and responsibility as alleged, but whether the City made the connection or had knowledge that the connection had been made." *Id.* at 66 (emphasis in original).

The parties do not dispute that the City owns Dealey Plaza and that the City's paramedics responded to the 9-1-1 call regarding Mazzaro's injury. However, the

City asserts that there is no evidence that the City had subjective awareness of its alleged fault in causing or contributing to the injuries alleged by Mazzaro. In an affidavit attached to her second amended response to the City's plea, Mazzaro stated: "When the EMS arrived, I talked with the paramedics and told them that I twisted my ankle because of a huge drop off from the bottom step of the Monument to the grass." In addition, Mazzaro asserted that the City's own exhibits established that the City had actual knowledge that she was injured at the Grassy Knoll at Dealey Plaza and had a possible broken ankle.[5]

Exhibit 5 is an affidavit from Daniel Salazar, custodian of records for Dallas Fire & Rescue, Communications Division, for the City of Dallas, authenticating an attached incident detail report, dated January 16, 2017. The report details dispatching Dallas Fire & Rescue to the "Grassy Knoll of the Kennedy Site" to pick up a female with a possible broken ankle for transport to Methodist Hospital. Exhibit 6 is an affidavit from Robert Holloway, custodian of records for Dallas Fire & Rescue Division of the City of Dallas, authenticating an attached Prehospital Care Report Summary. The report, dated January 16, 2017, described Mazzaro's condition and her ankle injury. According to the report, Mazzaro told the paramedics that she lost her balance and twisted her ankle.

---

[5] Exhibits 5 and 6 to the City's plea identified the date, time, and location of the incident.

We agree with the City that Mazzaro's evidence falls short under the second prong of the actual notice test, which requires that the City have "subjective awareness" of its "alleged fault producing or contributing to" the injury. *See Worsdale*, 578 S.W.3d at 59, 63. There is nothing in the paramedics' reports to suggest that the City was at fault for causing or contributing to Mazzaro's injury. In the Prehospital Care Report Summary, the paramedics noted that the patient "states she was walking when she lost her balance and twisted her ankle." The report does not mention a drop off or defective condition on the property. And there is no mention of an uneven pathway, as alleged in Mazzaro's petition.

The City contends that even assuming Mazzaro told the paramedics that her fall was caused by a drop off or uneven pathway, her report to the paramedics was insufficient to provide actual notice to the City. In its appellate brief, the City discusses similar circumstances in *City of Houston v. Miller*, No. 01-19-00450-CV, 2019 WL 7341666 (Tex. App.—Houston [1st Dist.] Dec. 31, 2019, no pet.) (mem. op.), in which the plaintiff asserted that the City of Houston had subjective awareness of its fault in contributing to his injuries because, among other things, the EMS Patient Care Report indicated that he told the paramedics who responded to his motorcycle accident that he "hit a pot hole and lost control of [his] bike and was thrown from it." *Id.* at *2. In finding that the plaintiff's evidence fell short in providing the city with actual notice of his claim, the court observed that plaintiff's evidence "'did not even imply, let alone expressly state, that the City was at fault'

–11–

for the accident." *Id.* at *5 (quoting *City of Dallas v. Carbajal*, 324 S.W.3d 537, 539 (Tex. 2010) (per curiam)).

Just as Miller's statement to paramedics about the pothole was insufficient to create a fact question on actual notice, Mazzaro's statement to paramedics about the "huge drop off" is similarly insufficient in this case. *See id.* Here, the City's evidence shows that the paramedics at the scene were focused on rendering emergency medical services to Mazzaro and transporting her to the hospital. The reports documented Mazzaro's injuries, but did not imply or state that the City was at fault for those injuries. "Many governmental units may, in the ordinary course of events, have knowledge of . . . injuries . . . but no warning—'notice'—that a lawsuit might eventually be filed alleging the governmental unit was responsible in some way, shape, or form." *Worsdale*, 578 S.W.3d at 72; *see also Carbajal*, 324 S.W.3d at 538–39 (holding that police report concluding that claimant drove "into [a] gap in [the] street [that] was not properly blocked" only described "what apparently caused the accident" but did not say who had failed to erect or maintain barricades, and was therefore insufficient to put city on actual notice).

There is no evidence in the record that raises a fact question as to the City's subjective awareness of its alleged fault in causing or contributing to Mazzaro's injuries. "When the facts do not even *imply* the governmental unit's fault, they are legally insufficient to provide actual notice." *Worsdale*, 578 S.W.3d at 64 (emphasis

–12–

in original). Accordingly, we conclude there is no fact issue that the City had actual notice under subsection (c) of section 101.101. *See* CIV. PRAC. & REM. § 101.101(c).

**Conclusion**

Under the applicable standard of review, we conclude there is no evidence the City received formal notice of Mazzaro's claims. Further, the evidence does not raise a fact question as to whether the City had actual notice. Because lack of notice is an incurable jurisdictional defect, we sustain the City's first and second issues and determine it unnecessary to address the City's remaining issues. We reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Mazzaro's claims for lack of subject-matter jurisdiction.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

200103f.p05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS, Appellant

No. 05-20-00103-CV      V.

MICHELLE MAZZARO, Appellee

On Appeal from the 134th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-00842. Opinion delivered by Justice Pedersen, III. Justices Whitehill and Reichek participating.

In accordance with this Court's opinion of this date, the order of the trial court is **REVERSED** and judgment is **RENDERED** dismissing appellee's suit for lack of subject-matter jurisdiction.

It is **ORDERED** that appellant CITY OF DALLAS recover its costs of this appeal from appellee MICHELLE MAZZARO.

Judgment entered this 23rd day of November, 2020.