Opinion issued December 28, 2023



In The

# Court of Appeals

### For The

# First District of Texas

————————————

## NO. 01-22-00496-CV

————————————

## CITY OF HOUSTON, Appellant

## V.

## MARVIS HUFF, Appellee

---

### On Appeal from the 151st District Court
### Harris County, Texas
### Trial Court Case No. 2022-02799

---

### MEMORANDUM OPINION

In this personal injury suit, appellant, the City of Houston, appeals the trial court's denial of its motion for summary judgment on immunity grounds and in favor of appellee Marvis Huff on his negligence claim. In its sole issue, the City contends that Huff failed to demonstrate a fact issue regarding the City's notice of his claim,

as required to find a waiver of governmental immunity under the Texas Tort Claims Act.

We affirm.

## Background

On May 18, 2021, Huff was traveling northbound on 6400 Main Street in Houston, Texas. Houston Police Department ("HPD") Officers D. Miller and M. Flores were traveling southbound on 6400 Main Street when Miller, who was driving an HPD patrol vehicle, made an improper left turn "through a green light, from the straight traffic only lane" and struck Huff's vehicle, which was traveling straight through the intersection. Huff was found "l[]ying on the street" by Houston Fire Department ("HFD") Firefighters/Paramedics, and he complained of "cervical neck pain, lower back pain, and a headache" during HFD's initial assessment at the accident scene. Huff "didn[']t walk on scene" and was "collared and backboarded" by HFD and transported to Memorial Hermann Hospital in the Medical Center.

HPD Officer J. Rangel arrived at the scene of the collision and investigated the accident. In the Texas Peace Officer's Crash Report, Rangel concluded that Officer Miller turned improperly from the wrong lane and identified Miller's

2

improper turn as the sole contributing factor to the accident. Rangel noted in the crash report the severity of Huff's injuries as "C," meaning "possible injury."[1]

On January 14, 2022, Huff sued the City, asserting negligence and negligence per se claims under the Texas Tort Claims Act ("TTCA").[2] The City answered and specially excepted to Huff's petition, asserting a general denial and affirmative defenses, including governmental immunity. The City asserted, among other things, that Huff failed to provide timely written notice of his claim as required by Texas Local Government Code Section 51.077 and Article IX, Section 11, of the City's Charter.[3]

The City later moved for summary judgment as to Huff's negligence claims on jurisdictional grounds, arguing that Huff did not provide the required notice within 90 days of the vehicle collision, as required by the City's charter. The City also argued that it did not have actual notice of Huff's claims because the crash report was not sufficient to provide notice. Finally, the City argued that Huff's negligence per se claim fell outside the TTCA's limited waiver of immunity. In support of its

---

[1] *See* TEX. DEP'T OF TRANSP., TEX. PEACE OFFICER'S CRASH REPORT CODE SHEET (2018), https://ftp.txdot.gov/pub/txdot-info/trf/crash_notifications/2018/code-sheet.pdf.

[2] *See* TEX. CIV. PRAC. & REM. CODE § 101, et seq.

[3] Huff amended his petition on February 4, 2022. The first amended petition is substantially identical to the original petition, except for a change in the name of the service agent for the City.

motion, the City attached a copy of the City's charter, Huff's responses to the City's first set of discovery requests, and an October 13, 2021 letter from Huff to the City providing written notice of the accident and his injuries.

Huff responded to the City's motion for summary judgment, arguing that because the City had actual notice of his personal injuries, he was not required to provide formal notice within 90 days of the collision. As supporting evidence, Huff attached the crash report and his medical records from Memorial Hermann, which included a report prepared by the HFD paramedics who treated Huff at the scene of the accident and transported him to Memorial Hermann. Huff also stated he did not wish to maintain his negligence per se claim and conceded that summary judgment on that claim would be appropriate.

The trial court denied the City's motion for summary judgment and, as conceded by Huff, dismissed his negligence per se claim with prejudice. This interlocutory appeal followed.[4]

## Discussion

In its sole issue on appeal, the City contends that the trial court erred in denying its motion for summary judgment because Huff failed to provide the City with formal notice of his personal injury claim within 90 days of his injuries, as

---

[4] *See* TEX. CIV. PRAC. & REM. CODE §51.014(a)(8); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 549 (Tex. 2019).

required by the City's charter.  It further argues that Huff failed to demonstrate a fact issue concerning the City's actual notice of Huff's claims, as required to sustain the waiver of governmental immunity under the TTCA.

Huff responds that the evidence introduced in response to the City's motion, including the crash report and medical records, created a genuine issue of material fact as to whether the City had actual notice of his injuries and, thus, the trial court properly denied summary judgment.

## A.    Standard of Review

Subject matter jurisdiction is essential to a court's power to decide a case. *City of Hous. v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013).  To establish subject matter jurisdiction, a plaintiff must allege facts that affirmatively demonstrate the court's jurisdiction to hear the claim. *Swanson*, 590 S.W.3d at 550.  Whether a court has subject matter jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A lack of subject matter jurisdiction may be raised in a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  We review a trial court's decision to grant a motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  Under the traditional summary judgment standard, the movant has the burden to show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt.*

5

*Co.*, 690 S.W.2d 546, 548 (Tex. 1985).  To determine whether there are disputed issues of material fact, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Nixon*, 690 S.W.2d at 548–49.

**B.    Applicable Law**

Generally, governmental entities, such as the City, are immune from suits seeking to impose tort liability on them. *See City of San Antonio v. Tenorio*, 543 S.W.3d 772, 775 (Tex. 2018).  That immunity deprives trial courts of subject matter jurisdiction over such suits, absent a waiver of their immunity. *Id.*  The TTCA contains such a waiver if notice, as prescribed by statute, is given. *Id.*

Under the TTCA, a governmental unit must be given notice of a claim against it "not later than six months after the day that the incident giving rise to the claim occurred." TEX. CIV. PRAC. & REM. CODE § 101.101(a).  This formal notice of claim must describe "(1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident." *Id.*  Claimants must also comply with any time requirements for notice that a city has adopted by charter or ordinance. *See id.* § [non-breaking space] 101.101(b).  Here, the City's charter requires that written notice of a claim be provided to the City within 90 days after the injuries or damages were sustained. *See* HOUS., TEX., CHARTER, art. IX, § 11.

Formal notice of a claim under subsections (a) or (b), however, is not required "if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." TEX. CIV. PRAC. & REM. CODE § 101.101(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). For a governmental unit to have actual notice, it must have knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to it; and (3) the identity of the parties involved. *See Cathey*, 900 S.W.2d at 341 ("*Cathey* elements"); *see also Tenorio*, 543 S.W.3d at 776 (stating that, to have actual notice, governmental unit must have same knowledge it is entitled to receive in formal notice of claim).

One of these forms of notice—formal or actual—is required as a jurisdictional prerequisite to suit. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 77 (Tex. 2019). The purpose of the notice requirement is to ensure the prompt reporting of claims to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial. *Cathey*, 900 S.W.2d at 341. Failure to comply with the notice provision requires dismissal. *See Tenorio*, 543 S.W.3d at 775–76.

Knowledge that a death, injury, or property damage has occurred, standing alone, is not sufficient to put a governmental unit on actual notice for TTCA purposes. *Id.* at 776. Actual notice requires that the governmental unit not only have

7

knowledge of some injury but requires it have subjective knowledge of information sufficient to identify the loss ultimately alleged. *Jones v. Bd. of Trs. of Galveston Wharves*, 605 S.W.3d 641, 643 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing *Worsdale*, 578 S.W.3d at 71). "The standard is necessarily subjective, because lack of formal notice is excused only by actual, not constructive, notice." *Worsdale*, 578 S.W.3d at 65. Actual notice may be imputed to a governmental unit when its fault is obvious, or an agent charged with a duty to investigate and report to the unit receives notice of the three *Cathey* elements. *Angleton Danbury Hosp. Dist. v. Chavana*, 120 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Thus, an incident that triggers an investigation and accident report will impute such notice where there is evidence to connect the accident to an action or omission by the governmental unit such that it should have known of its potential culpability. *See id.* The agent charged with a duty to investigate need not be a member of the agency which is at fault. *See Worsdale*, 578 S.W.3d at 77. If a governmental unit investigates an accident, whether the information acquired imparted actual notice depends on the particular facts. *Tenorio*, 543 S.W.3d at 776.

## C.    Analysis

In its sole issue, the City contends that Huff's formal notice of his claim to the City was untimely and that there is no evidence that the City had actual notice of his claim.

### 1.    Formal Notice

The accident in this case occurred on May 18, 2021.  Thus, under the TTCA and the City's charter, Huff was required to give the City formal notice of his claim within 90 days after the date he sustained injuries, or by August 16, 2021. *See* TEX. CIV. PRAC. & REM. CODE § 101.101(b); HOUS., TEX., CHARTER, art. IX, § 11.

The City's summary judgment evidence included Huff's October 13, 2021 notice letter providing the City written notice of the collision and Huff's claims, which is dated almost 60 days after the deadline for notice had passed.  Huff does not dispute that he failed to provide timely formal notice of his claim to the City. However, as the City concedes, formal notice is not required where there is evidence that the City had actual notice of an injury. TEX. CIV. PRAC. & REM. CODE § 101.101(c).  We therefore turn to the question of whether there is any evidence that the City had actual notice of Huff's personal injury claim under section 101.101(c).

## 2. Actual Notice

The City argues that it lacked subjective knowledge of Huff's injuries and its alleged fault in the accident that produced or contributed to Huff's injuries. The City argues that knowledge that an injury or property damage has occurred, standing alone, is not sufficient to constitute actual knowledge for purposes of the TTCA. The City contends that Huff's reliance on the crash report, which stated only that Huff had "possible injuries" and was transported by HFD to Memorial Hermann Hospital, is insufficient to confer actual notice on the City.

We disagree. Viewing the summary judgment evidence in favor of Huff as the nonmovant, we conclude that the evidence created a fact issue as to the City's actual notice of Huff's personal injury claims.

In response to the City's motion for summary judgment, Huff attached the crash report prepared by Officer Rangel. Under "Investigator's Narrative Opinion of What Happened," the crash report states that Unit 1 (Officer Miller's vehicle) was traveling southbound on 6400 Main Street in Lane #2 of four lanes, which was designated as a straight-only lane. Unit 2 (Huff's vehicle) was traveling northbound on 6400 Main Street in Lane #3 of four lanes, which was also designated as a straight-only lane. The crash report further states that Unit 1 "turned improperly-wrong lane . . . from Lane #2 through a green lights, from the straight traffic only lane with lights and sirens. Unit #1 did not turn from Lane #1 which had a red light."

The crash report states that Unit 2 was traveling straight through the intersection and "Unit #1 . . . struck . . . Unit #2."

The crash report included the diagram below, depicting the crash:



In the section entitled "Contributing Factors (Investigator's Opinion)," the crash report states:

| | 36 Contributing Factors (Investigator's Opinion) | | | |
|---|---|---|---|---|
| FACTORS & CONDITIONS | Unit # | Contributing | | May Have Contrib. |
| | 1 | 65 | | |
| | | | | |

According to the Texas Peace Officer's Crash Report Code Sheet, a code 65 means "Turned Improperly – Wrong Lane." Thus, according to the crash report, the sole contributing factor for the accident was Officer Miller's improper turn from the wrong lane.

The crash report also notes the severity of Huff's injuries as "C," meaning "possible injury," and that Huff was transported to Memorial Hermann by HFD.[5]

In addition to the crash report, Huff attached a report prepared by the HFD firefighters/paramedics that treated him at the scene and transported him to the hospital.[6] In that report, the officers described Huff's complaint as "neck/back pain" and stated that his primary symptom was "pain, back." The narrative section of the report stated:

> A007 AOSTF 35YO BLK M LAYING ON THE STREET, C COLLARED AND BACKBOARDED BY E033. PT WAS INVOLVED IN MODERATE MVA, HIS CAR WAS STRUCK BY HPD VEHICLE RESPONDING TO EMERGENCY IN MED CENTER, JUST TWO BLOCKS FROM MEMORIAL HERMANN MTC. A007 ASSUMED PT CARE UPON ARRIVAL. PT WAS AXO4 GCS 15 AND DIDNT WALK ON SCENE. PT DENIED LOC BUT STATED CERVICAL NECK PAIN, LOWER BACK PAIN, AND A HEADACHE UPON INITIAL ASSESSMENT. PT HAD NO OBVIOUS WOUNDS, NO DCAP-BTLS NOTED. PT WAS LOADED UP AND TRANSPORTED TO MEMORIAL HERMANN MTC WHERE CARE WAS TRANSFERRED TO THE ER STAFF UPON TRIAGE.

For the reasons below, we conclude the above evidence is sufficient to create a fact issue as to whether the City had both subjective knowledge of Huff's injuries and of its alleged fault in contributing to that injury.

---

[5] *See* TEX. DEP'T OF TRANSP., TEX. PEACE OFFICER'S CRASH REPORT CODE SHEET (2018).

[6] The City does not argue on appeal that this HFD report cannot impute notice to the City, or that the firefighters/paramedics are not proper agents of the City, or that this evidence was improper summary judgment evidence.

### a. Knowledge of Injury

As to subjective knowledge of Huff's injuries, the City argues that the notation of "possible injury" in the crash report and the statement that Huff was transported to the hospital is insufficient to confer actual notice on the City. We disagree.

First, the City fails to cite any authority supporting the proposition that a peace officer's notation of *possible* personal injury is insufficient to confer subjective awareness of the injuries that Huff ultimately alleges in this lawsuit. Nor are we aware of any. In fact, this court, and others, has acknowledged that there is no requirement that a claimant describe in full medical detail the nature and extent of his injury in order to satisfy the notice requirements under Section 101.101. *See Metro. Transit Auth. of Harris Cnty., Tex. v. Garza*, No. 01-18-00408-CV, 2019 WL 1523186, at *6 (Tex. App.—Houston [1st Dist.] Apr. 9, 2019, no pet.) (mem. op.).[7]

The Thirteenth Court of Appeals rejected this precise argument in a recent case, *Sharyland ISD v. Alvarez*, No. 13-22-00165-CV, 2023 WL 2807215 (Tex.

---

[7] *See also Ortiz-Guevara v. City of Hous.*, No. 14-13-00384-CV, 2014 WL 1618371, at *5 (Tex. App.—Houston [14th Dist.] Apr. 22, 2014, no pet.) (mem. op.) (stating "[w]e do not interpret the notice provision as requiring a claimant to describe in full medical detail the nature and extent of his injury" and holding that claimant's statements of neck and back pain to accident investigator were sufficient to satisfy actual notice requirements); *City of Wichita Falls v. Jenkins*, 307 S.W.3d 854, 860 (Tex. App.—Fort Worth 2010, pet. denied) (rejecting city's argument that detailed description of nature and extent of plaintiffs' injuries was required and concluding that such is "not the purpose of the notice requirement; all that is required is enough information for the City to investigate for the purpose of guarding against unfounded claims, settle claims, and prepare for trial").

App.—Corpus Christi–Edinburg Apr. 6, 2023, no pet.) (mem. op.). There, the plaintiffs were injured in a traffic accident with a Sharyland school bus, and Sharyland ISD argued that the crash report did not provide actual notice of the claim because it reported only a "possible" injury to the plaintiff, who refused treatment at the scene. *Id.* at \*1–3. The *Sharyland* court disagreed and explained:

> A contemporaneous statement of a Sharyland employee on the bus described [the bus driver] driving into the oncoming traffic lane, forcing another vehicle to veer against the guard rail and "scrape against the entirety of the length of the railing, narrowly avoiding contact with the bus." Further, a Sharyland dispatcher learned that [the bus driver] had engaged in a possible "hit and run." The crash report corroborates the witness accounts, and contrary to Sharyland's assertion, includes notice as to injuries and property damage. Officer Resendez concluded that [the bus driver's] failure to give half the roadway was a factor causing the accident. He identified a possible injury to [one of the plaintiffs] and noted damage to the vehicle's right side. He also identified the [plaintiffs] as the occupants of the vehicle.
>
> Thus, it is undisputed that Sharyland had notice, within six months of the accident, of: (1) personal injury and property damage; (2) its employee's alleged fault producing or contributing to the injury and property damage; and (3) the identity of the parties involved.

*Id.* at \*3. The court also rejected Sharyland ISD's "conclusory statement that a peace officer's notation of a possible personal injury is insufficient for purposes of actual notice of injury under the TTCA," explaining that a governmental entity need not be absolutely certain as to the nature and extent of a claimed injury to have actual notice under the TTCA. *Id.* at \*3 n.5 (citing *City of San Antonio v. Cervantes*, 521 S.W.3d

14

390, 396 (Tex. App.—San Antonio 2017, no pet.); *City of Wichita Falls v. Jenkins*, 307 S.W.3d 854, 860–61 (Tex. App.—Fort Worth 2010, pet. denied)).

Furthermore, here, the cases the City cites are readily distinguishable. For instance, the City cites to a recent decision from this Court, *Jones v. Board of Trustees of Galveston*, which involved personal injury claims related to a slip-and-fall incident at the Port of Galveston's cruise ship terminal. 605 S.W.3d at 642. The plaintiff argued that the Port had actual notice of her alleged injuries based on a report prepared by one of the Port's officers that documented that her "knee and foot appeared red after the fall." *Id.* at 643. The incident report that the plaintiff relied on in *Jones*, however, also documented that the victim did not report any injuries, that she had already left the terminal by the time the investigator arrived, and that she had told the investigator that she was "not injured and did not need EMS." *Id.*

Based on that record, this Court in *Jones* held that "the officer's investigation did not provide the Port with actual notice of [the plaintiff's] claim as a matter of law." *Id.* at 644. Rather, noting that the plaintiff had disavowed any injury, we concluded that "[t]he investigation showed no more than that [the plaintiff] fell, got back to her feet and departed, disavowed any injury, and declined medical assistance. That [is] not enough to give the Port actual notice of an injury." *Id.*

Similarly, in *City of San Antonio v. Cervantes*, an on-duty police officer driving a City of San Antonio Police Department ("SAPD") vehicle failed to yield

15

the right of way and collided with a vehicle driven by Cervantes, an on-duty deputy with the Bexar County Sheriff's Office. 521 S.W.3d at 392. Cervantes sued the City for the personal injuries allegedly caused by the police officer's negligence. *Id.* The trial court denied the City's plea to the jurisdiction, and, on appeal, the City argued that it was not given notice that Cervantes was injured. *Id.* at 395. The City's evidence in support of its plea included the Texas Police Officer's Crash Report, the SAPD Vehicle Accident Report and Loss Notice, and excerpts from the depositions of Cervantes and his supervisor. *Id.*

Both reports in *Cervantes* stated that there was damage to the Bexar County vehicle, but that there were no injuries. *Id.* Cervantes's supervisor testified that he spoke to Cervantes not long after the accident and that Cervantes told him that he was not injured. *Id.* Finally, Cervantes denied stating that he was not injured, but stated that he told an SAPD supervisor and his own supervisor that he was "shaken up" or "kind of numb," but thought he was "all right" and "okay." *Id.* at 396. The court of appeals held that these words did not constitute "any notice that he ha[d] received some injury." *Id.* "Being 'shaken up' or 'numb' is a natural consequence of being in a vehicular accident and communicating that fact does not, alone, give notice that the person has been injured." *Id.*[8]

_____

[8] The City also cites *City of San Antonio v. Rocha*, No. 04-18-00367-CV, 2018 WL 6517169, at *4 (Tex. App.—San Antonio Dec. 12, 2018, no pet.) (mem. op.), in

16

Here, contrary to *Jones* and *Cervantes*, there is no evidence in the summary judgment record that Huff disclaimed any injury or refused treatment. To the contrary, the crash report in this case noted possible injuries to Huff and that he was transported to Memorial Hermann Hospital.[9] The HFD narrative also describes Huff's condition at the scene, including that he was lying in the street, was "backboarded," did not walk on-scene, and complained of neck and back pain. Huff

---

support. That case is likewise distinguishable, as the investigating officer's accident report contained a notation that "[t]here were no injuries in this crash." *Id.*

[9] This Court's opinion in *City of Houston v. Musyimi*, No. 01-21-00670-CV, 2022 WL 2919724, at \*5 (Tex. App. July 26, 2022, no pet.) (mem. op.), is also distinguishable. In *Musyimi*, this Court held that the City did not have actual notice of the plaintiff's personal injury claim because it did not have subjective awareness of his personal injuries. We noted that "a governmental unit's awareness of an accident, without more, is not sufficient to show that it had subjective knowledge of any personal injuries sustained in the accident." *Id.* Nor was the fact that the City conducted an investigation enough to show that the City had the requisite subjective knowledge to establish actual notice—particularly because the City's investigation did not reveal Musyimi's personal injuries. *Id.* The crash report in *Musyimi* "affirmatively showed that the City's investigation of the accident found that Musyimi had not sustained any personal injury in the accident." *Id.* We explained:

> The notation "N" was entered in the box designated for the investigating officers to report the severity of Musyimi's injuries, if any. The code sheet for the crash report defined an entry of "N" to mean "Not Injured," thus indicating that the officers were neither informed nor otherwise aware that Musyimi had sustained any personal injury as a result of the accident. The report similarly reflected that Officer Cerda and his passenger were uninjured. It also indicated that Musyimi had driven his car from the scene.

*Id.* Contrary to the report in *Musyimi*, the crash report here noted that Huff sustained "possible" injuries and that he was transported to the hospital. Huff also reported back and neck pain to HFD on-scene. These facts make *Musyimi* distinguishable.

17

thus presented more evidence of the City's subjective awareness of his injuries than did the plaintiffs in *Jones* or *Cervantes*, or even in *Sharyland*.  Accordingly, viewing the evidence in favor of Huff, as we must, we hold that Huff raised a fact issue about whether the City had actual subjective awareness of his injuries.

### b. Knowledge of Fault

The City also contends that Huff failed to raise a fact issue about whether the City had subjective awareness of that it may be responsible for the injuries in the manner ultimately alleged by Huff. *See Worsdale*, 578 S.W.3d at 77.  The City appears to argue that the crash report did not provide the City with subjective awareness of its fault because it is a routine safety report that is generated after every car accident in Texas and that HPD's vehicular crimes division is required to conduct an initial investigation into all police-involved car accidents, regardless of the circumstances.  The City then cites to several cases  in which courts have held that there was no evidence in the record that raised a fact question as to the appellant's subjective awareness of its alleged fault.[10]  Each of the cases the City cites is

---

[10]     *See, e.g.*, *Harris Cnty. Sports & Convention Corp. v. Cuomo*, 604 S.W.3d 149, 157–58 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (stating, "[w]hen a report gives no indication that the governmental unit has been at fault in an incident, the unit has no actual notice as a matter of law" and concluding that neither incident report of slip-and-fall nor request to forward representation letter to liability carrier contained factual allegations placing governmental entity on notice of fault); *Needham Fire & Rescue Co. v. Balderas*, No. 14-16-00211-CV, 2017 WL 1416219, at *4–5 (Tex. App.—Houston [14th Dist.] Apr. 18, 2017, no pet.) (mem. op.) (concluding that governmental entities did not have actual notice where, among other things, the investigative report assigned fault to plaintiff); *City of San Antonio v. Herrera*, No.

18

distinguishable, however, because the incident or accident reports either did not assign fault at all, did not assign fault to the governmental entity, or assigned fault to either the plaintiff or some other party. That is not the case here.

Officer Rangel concluded in the crash report that Officer Miller improperly turned from the wrong lane and that this improper turn was the sole contributing factor to the accident. The report does not assign any fault to Huff or to any other party—other than Miller. Thus, the report in this case does more than just imply Miller's fault—it expressly assigns fault to him.[11]

An incident that triggers an investigation and accident report will impute actual notice where there is evidence to connect the accident to an action or omission by the governmental unit such that it should have known of its potential culpability. *Chavana*, 120 S.W.3d at 427. "The critical inquiry is the governmental unit's actual

---

04-13-00304-CV, 2013 WL 5653311, at *4 (Tex. App.—San Antonio Oct. 16, 2013, pet. denied) (mem. op.) (nothing in police report or traffic signal work reports expressly or impliedly referred to any fault by city for claimant's alleged injury); *Rojas v. Cnty. of El Paso*, 408 S.W.3d 535, 541 (Tex. App.—El Paso 2013, no pet.) (investigating officer's report noted that motor vehicle accident resulted because stop sign had been knocked down, but there was no evidence that County knew of sign's condition before accident, and report did not state that County had any duties regarding stop sign or that plaintiffs' injuries resulted from County's failures regarding such duties).

[11] *See, e.g.*, *Ortiz-Guevara*, 2014 WL 1618371, at *5 (holding plaintiff presented fact issue on issue of City's subjective awareness of its fault in producing or contributing to her claimed injury where police report indicated officer failed to control speed and listed this failure to control speed as "the sole factor or condition contributing to the accident").

19

anticipation of an alleged claim rather than subjective confirmation of its actual liability." *Worsdale*, 578 S.W.3d at 68. "The issue is not whether the City should have made the connection between injury and responsibility as alleged, but whether the City made the connection or had knowledge that the connection had been made." *Id.* at 66.

Accordingly, actual notice requires information sufficient to "alert the governmental unit to something impending." *Id.* at 70; *see Reyes v. Jefferson Cnty.*, 601 S.W.3d 795, 798 (Tex. 2020) (per curiam) ("The actual-notice standard does not require proof that the County believed it was liable."). Here, there is evidence that the City had such information.

Taking all the evidence favorable to Huff and indulging every reasonable inference in his favor, we conclude that a genuine issue of material fact exists regarding whether the City had actual notice of Huff's claim under section 101.101(c) of the TTCA. The trial court therefore did not err in denying the City's motion for summary judgment on immunity grounds. We overrule the City's sole issue.[12]

---

[12]    Because of our disposition, we do not reach the City's additional argument that its awareness of Huff's property damage was insufficient to confer notice of his personal injuries. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the trial court's order denying the City's summary judgment motion in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.