# Supreme Court of Texas

No. 24-0916

City of Houston,

*Petitioner*,

v.

Jessica Zuniga,

*Respondent*

On Petition for Review from the
Court of Appeals for the First District of Texas

JUSTICE YOUNG, joined by Justice Lehrmann, Justice Boyd, and Justice Sullivan, concurring in the denial of the petition for review.

Whether a court has subject-matter jurisdiction to hear a case should turn on clear rules—not on complex, ever-evolving tests or vague standards that cannot generate predictable results. Unclear jurisdictional rules waste time and money by forcing parties and courts to debate jurisdiction rather than resolve cases on their merits. Perhaps this Court's highest calling is to replace doubt about the law with certainty, to exchange confusion for clarity, and to transform murky rules into transparent principles—and to do so accurately. Nowhere could this duty be more important than when the issue is jurisdiction, which is always the

first inquiry and, when it is absent, also the last. Clarity in jurisdiction ensures that courts neither exercise unauthorized power nor mistakenly abandon the judicial function. Jurisdictional clarity tells citizens when access to their courts is available and on what that access depends.

We can make many jurisdictional inquiries clearer than they now are. "It is rare . . . that even the most vague and general text cannot be given some precise, principled content—and that is indeed the essence of the judicial craft." Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1183 (1989). If a jurisdictional statute is terribly confusing, clarity from the judiciary may be harder won, for "[e]ven where a particular area is quite susceptible of clear and definite rules, we judges cannot create them out of whole cloth, but must find some basis for them in the text that [the legislature] or the Constitution has provided." *Id.* But when the legislature has been clear enough and the confusion and lack of predictability result from the work of *this Court*—well, that is bad enough for *any* area of the law, but when it comes to statutes with jurisdictional consequences, it is an abject failure on our part.

This case implicates such a failure: the Court's decision in *Cathey v. Booth*, 900 S.W.2d 339 (Tex. 1995), a short per curiam opinion that has not stood the test of time. *Cathey* has darkened the Court's approach to a jurisdictional provision in perhaps the most jurisdiction-laden statute of them all—the Texas Tort Claims Act. That provision, § 101.101 of the Civil Practice and Remedies Code, implicates jurisdiction by prescribing the required "notice" that a governmental entity must receive before a tort suit against it may be filed. Without the requisite notice, sovereign immunity is not waived, and thus a plaintiff injured by the State's

2

employees or instrumentalities may not invoke a court's subject-matter jurisdiction. More because of *Cathey* than despite it, § 101.101 has now plagued courts and litigants for decades.

The statutory requirement of notice is eminently reasonable and modest enough. The Act provides that a plaintiff can fulfill that requirement by timely sending the governmental unit a *formal* notice that includes specified information. But the Act further provides that formal notice is unnecessary if the governmental unit has *actual* notice. *Cathey* has all but erased that provision of the statute, even though the legislature purposefully included it. Notice should not be a game, much less a source of wasteful satellite litigation. The statute imposes a basic, functional requirement; it should not require interpretation as if it were a riddle from the Oracle at Delphi.

The question in this case is whether the City of Houston had *actual notice* of the plaintiff's claim. I concur in the Court's decision to deny the petition for review. The City likely had actual notice under *any* plausible standard. I write separately because the very fact that the dispute about notice in this comparatively simple case could lead all the way to a petition for review in the Supreme Court itself illustrates the harm that *Cathey* continues to wreak on the law. The actual-notice requirement should be sufficiently clear for a case either to proceed to the merits or to end. We should not need case after case, year after year, trying to figure out how *Cathey* and its progeny apply. And if that sounds bad, imagine the burden our jurisprudence imposes on our colleagues on the lower courts—not to mention citizens who attempt to invoke their statutory right to be heard in court.

3

Critics of *Cathey* assert that the problem largely springs from this Court's insertion of additional actual-notice requirements into the statute. Nullifying text can occur just as easily by adding as by subtracting—but adding requirements that have the effect of deleting a statutory rule is more insidious because it is less transparent. If the criticisms are correct, then this Court has erected an unnecessary barrier to relief for Texans whose claims against their own government have been *authorized* by their elected officials. The Tort Claims Act imposes many, many barriers, and I have written several decisions enforcing the Act's rigidity when the law requires it. But we should not throw up extra-statutory barriers of our own.

In an appropriate case, therefore, I would entertain arguments about whether our *Cathey*-infected actual-notice jurisprudence should be reformed and clarified, perhaps starting from scratch—which is to say, the text of the statute. We should scrape off the jurisprudential barnacles. If it is this Court that has injected confusing jurisdictional elements into the statute, then this Court has both the prerogative and the duty to reconsider those prior rulings. *Stare decisis* does not protect precedents that engender confusion—that doctrine targets them for destruction. *See, e.g.*, *Mitschke v. Borromeo*, 645 S.W.3d 251, 264 (Tex. 2022). And especially for *jurisdictional* rules, whenever this Court *may* bring clarity, we *should* do so, at least once a proper case comes before us.

## I

The case is pretty basic. Plaintiff Jessica Zuniga alleges that a vehicle driven by a City employee injured her when it struck her vehicle. She sued the City for the driver's negligence. The City filed a motion for

4

summary judgment and plea to the jurisdiction arguing that Zuniga failed to provide timely notice under the Act. The trial court denied the City's motion, and the City appealed. The court of appeals affirmed. No. 01-23-00853-CV, 2024 WL 3259847, at *4 (Tex. App.—Houston [1st Dist.] July 2, 2024). Although the parties agreed that Zuniga did not provide "formal notice" under the statute, the court held that the City had actual notice of her claim under § 101.101(c). *Id.* at *2, *4. The City petitioned for review.

## II

The Act provides that "[a] governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred." Tex. Civ. Prac. & Rem. Code § 101.101(a). The notice "must reasonably describe: (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident." *Id.* But that notice requirement does not apply "if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." *Id.* § 101.101(c).

In *Cathey*, the plaintiffs argued that "section 101.101(c) requires only that a governmental unit have knowledge that a death, an injury, or property damage has occurred." 900 S.W.2d at 341. Why would they make that argument? Probably because it just restated the statute's plain language.

But this Court disagreed in a per curiam opinion. We explained that "[t]he purpose of the notice requirement is to ensure prompt reporting of claims in order to enable governmental units to gather

5

information necessary to guard against unfounded claims, settle claims, and prepare for trial." *Id.* And we concluded that the plaintiffs' interpretation "would eviscerate the *purpose* of the statute." *Id.* (emphasis added). We speculated that applying the plain language might, for example, mean that any time someone dies at a government hospital after receiving treatment, the hospital would be deemed to have had actual notice of any ensuing claim. *Id.* We therefore held that "actual notice to a governmental unit requires knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved." *Id.*

The tension between *Cathey*'s holding and the statutory text is readily apparent. That tension did not go unnoticed or unchallenged. A five-justice majority eventually interpreted *Cathey* and its progeny to mean that, "[t]o have actual notice, a governmental unit must have the *same* knowledge it is entitled to receive under the written notice provisions of the [Act]." *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 776 (Tex. 2018) (emphasis added). In other words, the defendant must have all the information described in § 101.101(a). Thus, the majority held, "[e]vidence that a vehicle being pursued by the police is involved in a collision is not, by itself, sufficient to raise a fact question about whether the City, for purposes of the [Act], had subjective awareness that it was in some manner at fault in connection with the collision." *Id.* at 778.

Four justices dissented. Three of them—now-Chief Justice Blacklock, Justice Lehrmann, and Justice Boyd—remain on the Court. The fourth was my predecessor, Justice Guzman, who criticized the

6

majority's "cramped construction" of *Cathey* and later cases, which "thwarts, rather than effectuates, legislative intent." *Id.* at 781 (Guzman, J., dissenting). She argued that "[b]y construing the actual-notice exception to require self-acknowledgment of error, the Court erects an undue impediment to a merits-based disposition that is neither grounded in the statute's language nor consistent with the rationale that informs our precedent." *Id.*

Justice Boyd, joined by Justice Lehrmann and then-Justice Blacklock, described *Cathey* as an example of the broader truth that "courts usually do a very poor job of rewriting statutes." *Id.* at 788 (Boyd, J., dissenting). They noted that "according to subsection (c), subsection (a)'s formal-notice requirement does not apply if the governmental unit has 'actual notice' of the death, injury, or property damage on which the claim is based." *Id.* (quoting Tex. Civ. Prac. & Rem. Code § 101.101(c)). But the Court in *Cathey* rejected the argument "that subsection 101.101(c) means exactly what it says" and instead "rewrote subsection (c) to add requirements the statute does not impose." *Id.* at 788–89. Those three dissenting justices would have reconsidered *Cathey*. *Id.* at 789.

The debate did not end there. A year after *Tenorio*, a case came to us in which petitioners asked the Court to hold that a city had actual notice or, in the alternative, to overrule *Cathey*. *See Worsdale v. City of Killeen*, 578 S.W.3d 57, 61 (Tex. 2019). The Court held that the city had actual knowledge and, in dicta, held that *Cathey* should *not* be overruled, although the opinion largely reformulated it. *Id.* at 66–77. Justice Boyd, joined by then-Justice Blacklock, wrote separately to assert that the majority "unnecessarily and improperly proceed[ed] to address and

7

reject" the plaintiffs' alternative argument that *Cathey* should be overruled. *Id.* at 78 (Boyd, J., concurring). Significantly, they also opined that "*Cathey* and its progeny are inconsistent with themselves." *Id.* According to the concurring justices, "every time the Court has addressed section 101.101(c) since *Cathey, it has changed the rule it had most recently announced.*" *Id.* at 79 (emphasis added). And they continued to argue that *Cathey* was wrongly decided. *Id.* at 80–82.

Later, the Court denied the petition for review in *Meza v. City of Fort Worth*, 667 S.W.3d 295, 295 (Tex. 2023). In an opinion joined by Justice Lehrmann and me, however, Justice Boyd observed that "[t]his Court's approach to section 101.101(c) of the Texas Tort Claims Act has not been a model of consistency or clarity, to put it mildly." *Id.* at 296 (Boyd, J., dissenting from denial of the petition for review). Citing *Cathey*, *Tenorio*, and *Worsdale*, *see id.* at 296 n.1, he argued that the Court should have granted the petition to provide further clarity on the notice requirement, *id.* at 297.

I do not mention the many other petitions during this period raising the same issue.

### III

Although its precise contours have hardly been stable, *Cathey* has formally been the law for around three decades. Before departing from it, this Court would need to determine that it was wrongly decided and that overruling it would promote efficiency, fairness, and legitimacy. *Mitschke*, 645 S.W.3d at 263. *Cathey* likely meets these criteria, suggesting that *stare decisis* poses no obstacle to reconsidering *Cathey* and its progeny in an appropriate case.

8

First, the obvious tension between its holding and the statute's plain language provides a compelling argument that *Cathey* was wrongly decided. I find it hard to imagine that today's Court, if confronting the question in the first instance, would even hesitate before giving the statute the meaning that its words convey rather than one based on our speculation about its purposes. *See, e.g.*, *Univ. of Tex. v. GateHouse Media Tex. Holdings II, Inc.*, ___ S.W.3d ___, 2024 WL 5249449, at *6 (Tex. Dec. 31, 2024) ("Neither the PIA's purpose nor its directive that the act be liberally construed in favor of disclosure overcomes the courts' obligation to construe statutory text by its plain language."); *City of Denton v. Grim*, 694 S.W.3d 210, 214 (Tex. 2024) ("[G]eneral judicial statements about a statute's purpose can never substitute, of course, for a careful reading of the authoritative text enacted by the Legislature.").

The structure of § 101.101 shows that actual notice under subsection (c) is an *alternative* to formal notice under subsection (a). The two subsections require *different* elements for notice that qualifies. Subsection (a) requires that the notice describe "(1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident." But subsection (c) requires only that the governmental unit have actual notice "that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." Yet we have held that the two subsections require *identical* information: "What we intended in *Cathey* by the second requirement for actual notice was that a governmental unit have knowledge that amounts to the same notice to which it is entitled by section 101.101(a)." *TDCJ v. Simons*, 140 S.W.3d 338, 347 (Tex. 2004); *see also Cathey*, 900 S.W.2d at 341. (The fact that

9

we had to describe our own "intent" in an opinion that speculated about legislative intent ought to have been revealing.)

Moreover, in *Cathey*, the hospital presumably knew the identity of the plaintiff mother and was aware of the stillbirth that gave rise to the plaintiffs' claims. *Cathey*, 900 S.W.2d at 340. After all, it was not merely the fact of the stillbirth but the hospital's own medical records that led the plaintiffs' expert to conclude that not performing a cesarean section "until more than half an hour after the time that it was called for" was negligent. *Id.* at 342. But the Court rendered a take-nothing judgment for the hospital because "this information failed to adequately convey to the Hospital its possible culpability." *Id.* There may be other reasons why the hospital should have prevailed—but not because it lacked "actual notice" of what *the statute* deems sufficient.

The justices who dissented in *Tenorio* were not the only ones to question *Cathey*'s reasoning. One scholar has noted that although the "overall purpose" of the Act is to "expand governmental liability," this Court has interpreted the actual-notice requirement "in a way that restricts liability more severely than the language requires." David A. Anderson, *Judicial Tort Reform in Texas*, 26 Rev. Litig. 1, 42 (2007) (discussing *Simons* and *Cathey*). And even after the Court refused to overrule *Cathey* in *Tenorio* and *Worsdale*, judges and litigants remain unconvinced by *Cathey*'s statutory interpretation. *See, e.g.*, *Meza*, 667 S.W.3d at 296 & n.1 (Boyd, J., dissenting from the denial of the petition for review); *Osman v. City of Fort Worth*, No. 02-21-00117-CV, 2022 WL 187984, at *9 (Tex. App.—Fort Worth Jan. 20, 2022, pet. denied) ("The Family Members invite us to disregard *Cathey* because it contradicts the

10

plain language of the Texas Tort Claims Act . . . ."); *Town of Highland Park v. McCullers*, 646 S.W.3d 578, 586 n.10 (Tex. App.—Dallas 2021, no pet.) (noting that "Appellees assert that the *Cathey* decision language contradicts the legislative intent of the TTCA and fundamental judicial principles"); *Univ. of Tex. Sw. Med. Ctr. v. Alcantar*, No. 05-18-01320-CV, 2019 WL 3940980, at *3 (Tex. App.—Dallas Aug. 21, 2019, pet. denied) (Partida-Kipness, J., dissenting) (agreeing with the *Tenorio* dissent and arguing that "the supreme court's construction of the Act's actual notice exception . . . actually hinders, rather than effectuates, the legislature's intent as revealed in the plain language of the statute").

Second, it is doubtful that *Cathey* promotes efficiency, fairness, and legitimacy. "'Efficiency' reflects the central role of precedent—to provide clear and settled law." *Mitschke*, 645 S.W.3d at 263. "A precedent that becomes less useful over time and continues to generate confusion among parties and the judiciary cannot be regarded as 'efficient.'" *Id.* at 264.

My concern regarding *Cathey* is heightened because the Tort Claims Act's notice provision is jurisdictional. Tex. Gov't Code § 311.034; *Worsdale*, 578 S.W.3d at 66 (explaining that "[n]otice is a prerequisite to subject-matter jurisdiction"). And "[j]urisdictional rules should be clear." *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 14 (2015) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 321 (2005) (Thomas, J., concurring)). That is because "[s]imple jurisdictional rules . . . promote greater predictability." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). When the rules are *not* simple,

> two bad consequences will ensue . . . . Sometimes judges will
> be misled into trying lengthy cases and laboriously reaching
> decisions which do not bind anybody. At other times, judges

11

> will be so fearful of exceeding the uncertain limits of their powers that they will cautiously throw out disputes which they really have capacity to settle, and thus justice which badly needs to be done will be completely denied.

*Sisson v. Ruby*, 497 U.S. 358, 375 (1990) (Scalia, J., concurring in the judgment) (quoting Z. Chafee, The Thomas M. Cooley Lectures, *Some Problems of Equity* 312 (1950)).

There is thus a heightened need for clarity about what constitutes actual notice. On its face, § 101.101(c) *itself* appears to provide that clarity: It "simply, clearly, and unambiguously" explains the requirements for actual notice in contrast to those of formal notice. *Tenorio*, 543 S.W.3d at 786 (Boyd, J., dissenting). By contrast, *Cathey*'s departure from the statute's plain language continues to generate confusion and require this Court's periodic (and the lower courts' frequent) intervention. A truly clear rule, of course, would not have that consequence.

Justices of the courts of appeals have recognized that "[f]ollowing *Cathey*, confusion surrounded the second requirement that addressed the knowledge of fault in producing the injury." *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 339 (Tex. App.—San Antonio 2010, no pet.); *accord TDCJ v. Thomas*, 263 S.W.3d 212, 223 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (Keyes, J., dissenting) ("The language in *Cathey* led to confusion, however, over the proof required to establish actual notice of a potential claim against a governmental unit under section 101.101(c).").

To be sure, the Court has since addressed some of the confusion of its own making. For example, some courts of appeals applying *Cathey* concluded that "governmental entities have actual notice to the extent

12

that a prudent entity could ascertain its potential liability stemming from an incident, either by conducting further investigation or because of its obvious role in contributing to the incident." *City of Wichita Falls v. Jenkins*, 307 S.W.3d 854, 858 (Tex. App.—Fort Worth 2010, pet. denied). The Court—rightly or wrongly—rejected that conclusion, holding that "[i]t is not enough that a governmental unit should have investigated an incident as a prudent person would have, or that it did investigate, . . . or that it should have known from the investigation it conducted that it might have been at fault." *Simons*, 140 S.W.3d at 347–48.

But the periodic clarifications have come at a cost. "[E]very time the Court has addressed section 101.101(c) since *Cathey*, it has changed the rule it had most recently announced." *Worsdale*, 578 S.W.3d at 79 (Boyd, J., concurring). That is not the hallmark of an efficient precedent. Rather, "[e]specially for procedural or remedial issues that should be clear, the continuing need to expend judicial resources affirmatively indicates *in*efficiency." *Mitschke*, 645 S.W.3d at 264. Moving the goalposts for actual notice every few years is contrary to the aims of consistency and predictability that motivate *stare decisis* in the first place. It is thus unsurprising that dissenting opinions continue to appear in the courts of appeals regarding whether the governmental unit received actual notice and, in particular, whether the government had the subjective awareness of fault that this Court has required. *See, e.g.*, *State v. Navarrette*, 656 S.W.3d 681, 696 (Tex. App.—El Paso 2022, no pet.) (Rodriguez, C.J., dissenting); *Harris County Sports & Convention Corp. v. Cuomo*, 604 S.W.3d 149, 159 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (Spain, J., dissenting in part and concurring in part); *Brown v. Corpus Christi*

13

*Reg'l Transp. Auth.*, No. 13-15-00188-CV, 2017 WL 2806775, at \*5 (Tex. App.—Corpus Christi–Edinburg June 29, 2017, pet. denied) (Valdez, C.J., dissenting); *Univ. of Tex. Health Sci. Ctr. at Hous. v. McQueen*, 431 S.W.3d 750, 762 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (Christopher, J., dissenting); *TxDOT v. Anderson*, No. 12-07-00268-CV, 2008 WL 186867, at \*7 (Tex. App.—Tyler Jan. 23, 2008, no pet.) (Griffith, J., dissenting); *Thomas*, 263 S.W.3d at 221 (Keyes, J., dissenting).

*Stare decisis* is no barrier to reconsidering this jurisprudential mishmash. *Mitschke* itself, in articulating the requirements of *stare decisis*, concluded that they warranted overruling a precedent that could not satisfy those requirements. 645 S.W.3d at 266. True, "[t]here are times when even a bad rule is better than no rule at all." Scalia & Garner, *supra*, at 1179. That is what *stare decisis* is for, especially in the statutory context: to protect settled errors. *Mitschke*, 645 S.W.3d at 260 ("[T]he doctrine exists to protect wrongly decided cases. We hardly need *stare decisis* to adhere to precedents that we regard as correct; we would do that anyway."). The value of predictability is served by adhering to workable precedent, even if it is wrong. But a bad and *unclear* rule that continually generates confusion cannot be regarded as settled and thus cannot claim the full authority of *stare decisis*.

If an appropriate case were to reach the Court, I would therefore reconsider the statutory construction endorsed by *Cathey* and its progeny.

## IV

This, however, is not such a case. According to the crash report, Zuniga stated that the collision occurred when "the other vehicle ran the red light." She further stated that the City employee "initial[l]y told her

14

that he did not [run the red light], but then later told her that he may have ran the red light." That alleged admission put the City on notice that Zuniga was likely to claim that the City employee was at fault and caused her injuries. In other words, the City was aware not only of the accident but also of Zuniga's allegation that the City employee was at fault. This likely constituted actual notice under either the Act's plain language *or* the Court's more demanding precedents. *See* Tex. Civ. Prac. & Rem. Code § 101.101(c) (providing that the notice requirement is satisfied "if the governmental unit has actual notice . . . that the claimant has received some injury, or that the claimant's property has been damaged"); *Worsdale*, 578 S.W.3d at 65 (stating that "there must be subjective awareness connecting alleged governmental conduct to causation of an alleged injury to person or property in the manner ultimately asserted" but that "subjective awareness of alleged fault requires neither adjudication of liability nor confession of fault").

Because the trial court and court of appeals were probably correct that the notice in this case satisfied both the statute's plain text and the *Cathey* line of cases, I concur in the Court's decision to deny the City's petition for review. But the petition should not pass unnoticed, either. It is a symptom of *Cathey*'s disease and evidence of its rot. The very fact that cases like this continue to be litigated proves, in my view, that litigants really have no idea what will happen—"[j]udges might as well flip a coin." *Little v. Llano County*, No. 23-50224, ___ F.4th ___, 2025 WL 1478599, at *10 (5th Cir. May 23, 2025) (en banc). This murkiness is unfair and costly to both sides. Texas governmental entities and those suing them deserve to know what the law requires with maximum clarity.

15

*   *   *

I emphasize that I approach this question only as a judge reading a statute. Were I member of the legislature, I can readily imagine supporting a rule that aligned subsections (a) and (c) or otherwise was more demanding about notice. If I were a legislator, I would have access to all sorts of data about how governmental units address tort risk, how notice is provided, and what the real-life equities and fiscal considerations are. I could make a choice based on hearing evidence and testimony from all relevant stakeholders—local and state governmental leaders, members of the bar, organizations representing various interests, academics, and the public. As a judge, however, I may only give the existing statute the interpretation that its text and context reasonably bear. Accurately providing clarity—eliminating doubt and ambiguity—facilitates the act of self-government. Once the legislature (and everyone else) finally knows just what a statute's meaning is, it can commence the process of determining whether some other text would better reflect public policy. Currently, however, our unstable *Cathey*-infused jurisprudence inhibits legislative responses; no one knows exactly what the target is. I see only upside to reconsidering *Cathey*.

With these thoughts, I concur in the denial of the petition for review.

Evan A. Young
Justice

**OPINION FILED:** June 13, 2025

16