

# NUMBER 13-25-00184-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TEXAS DEPARTMENT OF PUBLIC
SAFETY,                                                                    Appellant,

v.

ALDO SAMUEL SOSA, AS
WRONGFUL DEATH BENEFICIARY
OF CARMEN HUERTA SOSA,
DECEASED AND SAMUEL LLOYD III,
AS WRONGFUL DEATH BENEFICIARY
OF VIRIDIANA CHARON LLOYD,
DECEASED,                                                               Appellees.

## ON APPEAL FROM THE 206TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron**
**Memorandum Opinion by Justice West**

Appellees Aldo Samuel Sosa and Samuel Lloyd III filed a lawsuit for negligence against appellant Texas Department of Public Safety (DPS) after a suspect fleeing from state troopers disregarded a stop sign and collided with a car occupied by Carmen Huerta Sosa and Viridiana Charon Lloyd (Decedents), resulting in their deaths. DPS filed a combined plea to the jurisdiction and a no-evidence and traditional motion for summary judgment. The trial court denied DPS's motion. On appeal, DPS argues that the trial court erred because appellees failed to raise a fact issue as to whether DPS had actual notice of appellees' claims under the Texas Tort Claims Act (TTCA). *See* TEX. CIV. PRAC. & REM. CODE § 101.101.[1] We reverse and render.

## I. STANDARD OF REVIEW & APPLICABLE LAW

Jurisdictional challenges are reviewed de novo. *City of Houston v. Gomez,* 716 S.W.3d 161, 164 (Tex. 2025) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004)). In de novo review, we exercise our own discretion and accord no deference to the trial court's decision. *Vaughn v. Vaughan*, 710 S.W.3d 412, 418 (Tex. App.—Eastland 2025, pet. denied) (citing *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)). A movant may challenge jurisdiction by attacking the existence of jurisdictional facts. *City of Austin v. Powell*, 704 S.W.3d 437, 447 (Tex. 2024). Like a no-evidence motion for summary judgment, a movant may assert that the "plaintiff has produced no evidence of an element required for the immunity waiver to apply." *Id.* To survive the challenge, the nonmovant must respond with jurisdictional evidence establishing a genuine issue of material fact as to the challenged element. *Id.*; see TEX. R. CIV. P. 166a(i)

---

[1] DPS asserts four issues on appeal. However, because we dispose of this appeal on its first issue, we need not address the others. *See* TEX. R. APP. P. 47.1.

(1997, amended 2026).[2] We view the evidence in the light most favorable to the nonmovant, resolving all doubts against the motion. *Miracle Auto., Inc. v. Geico Cnty. Mut. Ins. Co.*, 696 S.W.3d 713, 716 (Tex. App.—San Antonio 2024, no pet.). Nevertheless, the nonmovant must proffer more than a scintilla of probative evidence raising a genuine material fact issue. *Id.* More than a scintilla of evidence requires evidence that "rises to the level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

As a jurisdictional prerequisite to suit against a governmental unit for tort claims, the governmental unit must obtain notice as specified by the TTCA. TEX. CIV. PRAC. & REM. CODE §§ 101.002, 101.101; *Colquitt v. Brazoria County*, 324 S.W.3d 539, 543 (Tex. 2010) (citing TEX. GOV'T CODE § 311.034). The TTCA provides:

> (a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:
>
> (1) the damage or injury claimed;
>
> (2) the time and place of the incident; and
>
> (3) the incident.
>
> . . . .
>
> (c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

---

[2] A new version of Rule 166a became effective February 28, 2026. *See* TEX. R. CIV. P. 166a. We cite to the prior version, since this case was filed before then.

TEX. CIV. PRAC. & REM. CODE § 101.101. "Whether a governmental unit has actual notice is a fact question when the evidence is disputed, but it is a question of law when the evidence is undisputed." *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 776 (Tex. 2018).

Since 1995, the Texas Supreme Court has held that actual notice requires the governmental unit's subjective knowledge of (1) death, injury, or property damage; (2) the governmental unit's fault—as ultimately alleged by the claimant—that produced or contributed to the death, injury, or property damage; and (3) the identity of the parties involved. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 59, 63 (Tex. 2019); *Tenorio*, 543 S.W.3d at 776; *Tex. Dep't of Crim. Just. v. Simons*, 140 S.W.3d 338, 344 (Tex. 2004) *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). The TTCA's notice provision serves important functions: alerting governmental entities of the need to investigate claims, prompting authorities to abate dangerous conditions or practices, fostering settlement of meritorious claims, and providing time for budgeting decisions. *Worsdale*, 578 S.W.3d at 64.

## II.    DISCUSSION

The parties do not dispute that appellees failed to provide DPS formal notice of their claim within six months of the date of the accident. Instead, appellees contend that DPS had actual notice under the TTCA. However, DPS asserts that it lacked actual notice because it was not subjectively aware of its fault that produced or contributed to the Decedents' injuries and deaths.

## A.    Background

Appellees alleged a negligence claim against DPS as follows:

**FACTS**

4

On or about December 11, 2021, Carmen Huerta Sosa and Viridiana Charon Lloyd were stopped at a stop sign facing north bound at the intersection of North Holland Road and West 2 Mile Road in Mission, Hidalgo County, Texas. A vehicle driven by Defendant Esteban Cantu, Jr. was traveling west bound on the 700 block of West 2 Mile Road evading arrest from [DPS] troopers during a high-speed chase. As Ms. Sosa proceeded into the intersection traveling north bound in a lawful and prudent manner, Defendant Cantu continued at accelerated speeds, disregarded the stop sign at the intersection and violently collided with Ms. Sosa's vehicle, resulting in the deaths of Carmen Huerta Sosa and Viridiana Charon Lloyd. At all relevant times, Defendant DPS troopers were in violation of City of Mission laws and ordinances. Furthermore, Defendant DPS troopers' actions were taken with conscious indifference and/or reckless disregard for the safety of others, including Plaintiffs. Defendant DPS troopers knew or should have known that their actions in engaging in a high-speed chase within Mission city limits posed a high degree of risk of serious injury. There are no applicable exceptions to the waiver of immunity.

. . . .

## CAUSES OF ACTION

### A. NEGLIGENCE UNDER TEXAS TORT CLAIM ACT – DEFENDANT DPS

Defendant [DPS] is a governmental unit covered by the [TTCA]. While acting within the scope of employment of Defendant DPS, Trooper Angel Martinez and Trooper Jose Moya were operating motor-driven vehicles and had a duty to exercise ordinary care and operate the vehicle in a reasonable and prudent manner. At the time of the collision made the basis of this suit, Troopers Martinez and Moya breached their duty of care in the following ways:

1.    Participating in a high-speed pursuit with[in] City of Mission city limits in violation of local and municipal laws and ordinances;

2.    Failing to drive safely;

3.    Failing to keep a proper lookout;

4.    Failing to control speed; and

5.    All other acts and/or omissions that may be shown at the time of trial.

> Troopers Martinez's and Moya's breach of their duty of care was the proximate cause of this collision and the deaths of Carmen Huerta Sosa and Viridiana Charon Lloyd for which Troopers Martinez and Moya would be personally liable to Plaintiffs under Texas law.

In response to DPS's no-evidence challenge to jurisdictional facts, appellees presented evidence to support that DPS had actual notice under the TTCA, including dash cam video, a crash report, affidavits, and statements and deposition testimony from troopers. That evidence establishes that troopers received a call to assist in the pursuit of Cantu who failed to yield to border patrol. Troopers arrived on scene at the time Cantu was fleeing an HEB parking lot without stopping for traffic and making a wide turn onto Conway Avenue in the northward direction. Trooper Moya testified that, at this time, the reason for pursuing Cantu was both a failure to yield to border patrol and reckless driving. He also testified that there was a need to stop Cantu as soon as possible because of danger to the public, and "[i]t didn't look like [Cantu] was gonna stop on his own." Cantu immediately entered lanes of oncoming traffic to get around vehicles stopped at a traffic light. Troopers slowed their speed and likewise entered the lanes of oncoming traffic for approximately fifteen seconds before surpassing stopped motorists and returning to the lanes of travel. The cars in the lanes of oncoming traffic were in a stopped position and not moving at the time of this maneuver. The pursuit continued, and Cantu eventually disregarded a traffic signal while turning west onto 2 Mile Road from Conway Avenue. Troopers slowed down at the intersection before likewise turning west onto 2 Mile Road. Afterward, Cantu disregarded a stop sign and collided with the Decedents at the intersection of 2 Mile Road and Holland Avenue. The crash report indicated that fleeing or evading police was a contributing cause of the accident, and Cantu was smuggling six people.

6

DPS Sergeant Longoria conducted an internal investigation, as is standard policy for all DPS pursuits. Longoria reviewed reports and videos related to the pursuit and accident. He noted that, at the beginning of the pursuit, the troopers engaged in a "highly discouraged maneuver" by briefly driving in lanes of oncoming traffic to get around stopped motorists. Longoria stated that he engaged in verbal counseling with the troopers regarding the "option of terminating vehicle pursuits if faced with similar situations where they would not be able to exercise due care when operating their patrol units on the wrong side of the road." However, Longoria determined that, in this case, the troopers engaged in the maneuver safely. He provided the following in his supervisor remarks:

> Although this type of maneuver (Operating on the Wrong Side of Roadway) is highly discouraged: On this incident the operation was done at a reduced speed allowing the department drivers to bring the unit to a safe stop if needed. Other vehicular traffic had come to a stop for the marked DPS units utilizing the emergency lights and audible equipment. Due to the way vehicles park on this portion of Conway Ave[nue], it did not allow other vehicular traffic to move to the right and stop, thus preventing the pursuing law enforcement units a clear path to travel north on Conway Ave[nue].

Similarly, he testified in his deposition as follows:

> I know they did—they momentarily drove on the wrong side of the road. So yes, they were—they were on the wrong side of the road but, you know, our troopers did it—they reduced their speed. They maneuvered within traffic. They did it safely.

He further explained that the discouraged maneuver occurred at the beginning of the pursuit, well before the collision. The dash cam video shows the discouraged maneuver ended one minute and fifty-three seconds before the collision. Longoria also testified that "the suspect vehicle was well ahead of the pursuing law enforcement vehicle" during the pursuit, and the troopers were about a quarter mile behind Cantu at the time of the collision.

7

**B.     Analysis**

As a preliminary matter, appellees alleged that DPS was at fault for the deaths of Decedents because DPS violated various duties by chasing Cantu who disregarded a stop sign and collided with Decedents. Accordingly, DPS must have had subjective awareness of its fault for the Decedents' deaths because troopers pursued Cantu. *See Worsdale*, 578 S.W.3d at 59; *Simons*, 140 S.W.3d at 347 *Cathey*, 900 S.W.2d at 341. Appellees had the burden to present a fact issue on DPS's subjective knowledge. *See* TEX. R. CIV. P. 166a(i) (1997, amended 2026).

Appellees assert there is a fact issue based on two grounds. First, appellees assert that DPS had subjective knowledge of its fault because the crash report noted a contributing factor was that Cantu was fleeing or evading police. However, the Texas Supreme Court has held that this fact does not prove subjective knowledge of fault:

> Evidence that a vehicle being pursued by the police is involved in a collision is not, by itself, sufficient to raise a fact question about whether the City, for purposes of the TTCA, had subjective awareness that it was in some manner at fault in connection with the collision. While the crash report listed a factor and condition contributing to the crash as "Fleeing or Evading Police," this is not an express statement or even an implication that the officers or the City were at fault in regard to the collision. If it were, the actual notice provision of the TTCA would be meaningless in evading police situations: actual notice would exist every time a collision with injuries or property damage occurred when a driver was fleeing or evading police, regardless of the other facts.

*Tenorio*, 543 S.W.3d at 779.

Second, appellees assert DPS had knowledge of its fault because Longoria conducted an internal investigation. However, Longoria testified that an internal investigation is required every time a DPS trooper is involved in a pursuit as a matter of "preliminary procedure." And internal police investigations completed as a matter of

8

routine following police pursuits do not, on their own, generate subjective awareness of fault even if corrective measures are discussed with the pursuing officers. *See Meza v. City of Fort Worth*, No. 02-21-00099-CV, 2022 WL 623483, at *5 (Tex. App.—Fort Worth Mar. 3, 2022, no pet.) (mem. op.) (finding no fact issue was raised supporting that the city had subjective awareness of fault where chain of command officers investigated a pursuit, debriefed with the pursuing officer regarding "the pros and cons to continuing or terminating pursuits in the future," found the officer acted within policy, and subsequently recommended changes to the department's pursuit policy that were approved by the police chief). Moreover, although "[i]t is well established that a peace officer's flawed execution of policy gives rise to a colorable negligence claim," *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 928 (Tex. 2015), the discouraged maneuver (driving against oncoming traffic) noted in Longoria's investigation occurred one minute and fifty-three seconds before the collision at issue, and the collision occurred while troopers were a quarter mile behind Cantu. Thus, even if we assumed the driving against oncoming traffic was improper, there is no evidence that DPS was subjectively aware that such conduct caused the injuries and death arising from a crash occurring nearly two minutes later when Cantu blew through a stop sign while DPS cruisers were a quarter mile behind him. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A) (providing that governmental liability only extends to injuries "aris[ing] from the operation or use of a motor-driven vehicle"); *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003) (explaining that liability under Section 101.021 only attaches when a governmental unit's vehicle "actually causes the injury," and there is no liability where the vehicle "does

9

no more than furnish a condition that makes the injury possible" (internal quotations omitted)).[3]

Appellees failed to proffer more than a scintilla of probative evidence raising a genuine material fact issue that DPS had subjective knowledge of its fault. *See Miracle Auto.*, 696 S.W.3d at 716. Accordingly, DPS did not have notice of appellees' claims under the TTCA—a jurisdictional prerequisite to suit. *See Colquitt*, 324 S.W.3d at 543 (citing TEX. GOV'T CODE § 311.034); *Tenorio*, 543 S.W.3d at 780 (reversing and dismissing where notice was lacking under the TTCA). We sustain DPS's issue.

### III.    CONCLUSION

We reverse the denial of the plea to the jurisdiction and render judgment dismissing the case for lack of jurisdiction.

JON WEST
Justice

Delivered and filed on the
25th day of June, 2026.

---

[3] We also note that mere pursuit of a fleeing suspect—without other facts—does not expose law enforcement to liability for crashes involving the fleeing suspect. *See City of Mission v. Rodriguez*, No. 13-24-00585-CV, 2026 WL 775770, at *3 (Tex. App.—Corpus Christi–Edinburg Mar. 19, 2026, no pet.) (collecting cases); *see also City of Austin v. Powell*, 704 S.W.3d 437, 458 (Tex. 2024) (explaining that "exceeding the speed limit is part and parcel of a police chase." (citation modified)).